**S. Richard SZCZEPANIK,
et al., Petitioners,**

**v.**

**FIRST SOUTHERN TRUST COMPANY,
Respondent.**

**No. D–4546.**

Supreme Court of Texas.

June 2, 1994.

Harvey G. Joseph, John A. Koepke, and A. David Gross, Dallas, for petitioners.

Thomas K. Boone, Monte M. Bond, Dallas, and June E. Higgins, Spring, for respondents.

On Application for Writ of Error to
the Court of Appeals for the
Fifth District of Texas

PER CURIAM.

This case involves alleged lost profits sustained by First Southern Trust Company (FST), a wholly owned subsidiary of First Southern Holding Company (FSH), when certain officers and employees left FST and formed a competing business.

FST manages retirement assets primarily for retired airline pilots. In 1991, after serving for a brief period of time as president of FST and FSH, Richard Szczepanik resigned and formed a new corporation, Retirement Advisors of America, Inc. (RAAI), with other former officers and employees of FST and FSH. RAAI also manages retirement assets for retired airline pilots. Some of FST's clients transferred their retirement assets totalling $36 million from FST to RAAI. Szczepanik sued FSH for payment of his salary during the time he had served as president of FST and FSH. FST counterclaimed under numerous theories for damages resulting from the loss of customers to RAAI. After several days of testimony offered in FST's case in chief, the trial court excluded evidence of damages by FST under Tex.R.Civ.P. 215(5) for failing to supplement discovery that sought information as to the amount of damages, the method of calculating damages, and expert witnesses who would testify as to damages. The trial court granted Petitioners' motion for instructed verdict on the grounds that there was no evidence of damages. The court of appeals reversed and remanded the case holding that the evidence raised a fact issue concerning lost profits damages that precluded an instructed verdict on FST's claims, but affirmed the trial court's judgment awarding Szczepanik $97,803 on his salary claim. 880 S.W.2d 10. Because we hold there is no evidence of lost profits damages, we reverse the judgment of the court of appeals concerning the instructed verdict and remand to the court of appeals for consideration of FST's other points of error.

■ In reviewing the granting of an instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for jury determination of that issue. *White*, 651 S.W.2d at 262.

At trial, FST attempted to offer evidence of the lost profits it sustained and would sustain as a result of the transfer of assets to RAAI. FST offered evidence that $36 million in account assets were transferred to RAAI and that FST collected annual fees of .75% to 1% on account assets. FST also offered testimony that absent the interference of RAAI, FST would have expected to retain its customers' accounts for the lifetime of the individual account holders. FST also offered evidence that in 1991 it managed assets of $350 million and expected to make a profit of $250,000 to $500,000 per year beginning in 1991.

■ Recovery of lost profits does not require that the loss be susceptible to exact calculation. *Texas Instruments v. Teletron Energy Management, Inc.*, 877 S.W.2d 276, 279 (Tex.1994). However, the injured party must do more than show that they suffered some lost profits. *Id.* The amount of the loss must be shown by competent evidence with reasonable certainty. *Id.* What constitutes reasonably certain evidence of lost profits is a fact intensive determination. *Holt Atherton Ind., Inc. v. Heine*, 835 S.W.2d 80, 84 (Tex.1992). At a minimum, opinions or estimates of lost profits must be based on objective facts, figures, or data from which the amount of lost profits may be ascertained. *Id.* Recovery of lost profits must be predicated on one complete calculation. *Id.* at 85.

■ The evidence that FST expected to make a profit beginning in 1991 of $250,000 to $500,000 per year is legally insufficient to show lost profits. First, this evidence, elicited from the testimony of FST's secretary and treasurer, is pure speculation. There is nothing in the record to show how FST determined the amount of lost profits. *See Holt Atherton*, 835 S.W.2d at 84. Second, there is nothing in the record that relates the total amount of profits FST expected to make beginning in 1991 to the profits FST lost as a result of the transfer of retirement accounts to RAAI.

■ The evidence that FST lost $36 million in assets to RAAI and earned .75% to 1% in annual fees on such assets also is legally insufficient to show lost profits. While this evidence suggests that FST lost $270,000 to $360,000 in annual fees on the accounts transferred to RAAI, this evidence is legally insufficient to show lost profits because there is no evidence that FST could have expected to retain all of those accounts for any period of time. Rather, the uncontradicted evidence shows that the individual account holders could transfer their accounts to another trustee or retirement fund manager at any time. Without evidence that FST could have expected to retain the $36 million in retirement accounts for any length of time, there is no evidence that FST could have expected to earn profits on those accounts for any period of time.

The court of appeals' reliance on the testimony that FST could have expected to retain the accounts for the lifetime of the individual account holders does not support reversal of the trial court's judgment. First, this evidence is without any evidentiary foundation and therefore, is purely speculative and conclusory. Second, even considering this evidence, there is no evidence of the life expectancy of the individual account holders. Thus, again, there is no basis to determine the length of time FST could have expected to retain the $36 million in retirement assets. Third, there is no evidence that the individual account holders representing the $36 million in retirement assets were still alive at the time of trial. In short, there is no evidence that FST would have kept the $36 million or any portion thereof for any period of time.

We hold that on this record, there is no evidence of lost profits damages and Petitioners were entitled to an instructed verdict on damages. We reverse the judgment of the court of appeals and remand this matter to the court of appeals for consideration of FST's additional points of error.