**Dorothy JORDAN, Appellant,**

v.

**Alpha Mae JORDAN, Appellee.**

No. 01–96–00073–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Jan. 9, 1997.

**178**

Frederick P. Forlano, Houston, for appellant.

Douglas A. Sandvig, Houston, for appellee.

Before HEDGES, COHEN and TAFT, JJ.

## OPINION

HEDGES, Justice.

In this appeal of an instructed verdict, two women claim to be the wife of the decedent, Lonnie Jordan, at the time of his death. Both appellant, Dorothy Jordan, and appellee, Alpha Mae Jordan, sought a declaratory judgment from the trial court to that effect. Appellant contends on appeal that the trial court erred in instructing a verdict in favor of appellee. We reverse.

## FACTS

On September 14, 1957, decedent, Lonnie Jordan, married Faye Brooks (W1). In June, 1960, while still married to W1, decedent went to Arizona and entered into a relationship with Helen Thompson (W2), who was married at the time to Freddie Moran. On June 22, 1965, decedent and W1 divorced, and on July 19, 1965, decedent married appellee (W3) in Houston. Decedent and W2 ceased living together some time between 1964 and August, 1965. Decedent ceased living with appellee (W3) around December 8, 1970, and in 1979 began living with appellant (W4). On July 29, 1985, decedent and W2 were divorced. On August 26, 1985, decedent married appellant (W4). On May 3, 1993, decedent died while purportedly married to appellant (W4) and without ever having divorced appellee (W3).

After decedent's death, appellant (W4) was appointed administratrix of his estate. She filed an affidavit of heirship, and the court appointed a guardian ad litem for unknown heirs. After notification by the guardian ad litem, appellee (W3) filed a claim against the estate alleging that she was decedent's wife. Appellant (W4) then filed a suit for declaratory judgment asserting her claim as decedent's wife. Appellee (W3) responded with her own petition asking to be declared decedent's wife. The case was tried to a jury. At the close of evidence, the trial court granted appellee's motion for instructed verdict and declared W3 to be decedent's wife at the time of his death.

## VALIDITY OF MARRIAGE

In one point of error, appellant (W4) argues that the trial court erred in granting an instructed verdict that appellee was decedent's wife. Appellant (W4) contends that her marriage to decedent is presumed to be valid because it is the last marriage. Therefore, she argues, appellee (W3) had the burden to prove that appellant's marriage to decedent was invalid. The validity of one or the other of these marriages depends on the validity of decedent's marriage to W2. If he was validly married to W2 from the date of his divorce from W1 until the date of his marriage to W3, then his marriage to appellee (W3) is invalid and W4 is the surviving spouse. In order to establish that decedent was never married to W2, appellee W3 had to prove that W2 never divorced Freddie Moran and/or that there was no common law marriage between decedent and W2 because W2 never lived with decedent between the time of decedent's divorce to W1 and his marriage to appellee (W3). Appellant (W4) concludes that appellee (W3) did not meet that burden. We agree.

### Standard of Review

■ An instructed verdict is proper when the evidence conclusively proves a fact that establishes the movant's right to judgment as a matter of law. *Metzger v. Sebek,* 892 S.W.2d 20, 40 (Tex.App.—Houston [1st Dist.] 1994, writ denied). In reviewing the propriety of an instructed verdict, we must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Szczepanik v.*

First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994); Metzger, 892 S.W.2d at 41. We consider all the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. Szczepanik, 883 S.W.2d at 649; Metzger, 892 S.W.2d at 40. If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for a jury determination of that issue. Szczepanik, 883 S.W.2d at 649; Metzger, 892 S.W.2d at 41. When reasonable minds may differ about the truth of controlling facts, the issue must go to the jury. Collora v. Navarro, 574 S.W.2d 65, 68 (Tex.1978).

### Marriage to Helen (W2)

■ A marriage is void if either party was previously married and the prior marriage is not dissolved. TEX.FAM.CODE ANN. § 2.22 (Vernon Supp.1996). The marriage becomes valid, however, when the prior marriage is dissolved if since that time the parties have lived together as husband and wife and have represented themselves to others as being married. Id.

■ When two or more marriages of a person to different spouses are alleged, the most recent marriage is presumed to be valid as against each marriage that precedes it until one who asserts the validity of a prior marriage proves its validity. TEX.FAM.CODE ANN. § 2.01 (Vernon Supp.1996); Davis v. Davis, 521 S.W.2d 603, 605 (Tex.1975); Texas Employers' Ins. Ass'n v. Gomez, 313 S.W.2d 956, 958 (Tex.Civ.App.—Eastland 1958, writ ref'd n.r.e.). In order to rebut the presumption that a prior marriage was dissolved, it is necessary to rule out divorce proceedings where a spouse might reasonably have been expected to have pursued them. Davis v. Davis, 521 S.W.2d 603, 605 (Tex.1975).

■ Decedent entered into a relationship with W2 in June, 1960, while he was still married to W1. At that time W2 was married to Freddie Moran. Decedent and W2 divorced on July 29, 1985. Decedent's marriage to W2, therefore, was void at its inception. See TEX.FAM.CODE ANN. § 2.22 (Vernon Supp.1996). In order for decedent and W2 to have had a valid marriage, each had to have divorced his and her respective spouse, they had to live together, and they had to hold themselves out to be man and wife. W2 testified that she and Freddie Moran remained married until his death in 1995, and therefore, her marriage to decedent could never have been valid. Although Harris County records confirmed that she and Moran never divorced, neither W2 nor appellee (W3) ever checked the records in Walker County, where Moran was in prison for a number of years. Appellant (W2) concludes, therefore, that appellee (W3) has not established as a matter of law that Moran never divorced W2. See Davis, 521 S.W.2d at 605.

The following evidence raises a fact issue concerning whether decedent was married to W2. There is a 27–day period between decedent's divorce from W1 and his marriage to appellee (W3) in which decedent and W2 could have established a valid marriage by living together and holding themselves out to be husband and wife. This time period is calculated as follows. Decedent divorced W1 on June 22, 1965. He ceremonially married appellee (W3) on July 19, 1965, and lived with her until 1975. See TEX.FAM.CODE ANN. § 2.22 (Vernon Supp.1996). W2 testified that she and decedent ceased living together sometime in 1964 and never lived together during that 27–day period. Appellee (W3) testified that she and decedent were living together during that 27–day period before they married. Decedent's long-time friend, Don McCollough, testified that decedent and W2 did not live together during that 27–day period before decedent and appellee (W3) married, but he also stated that decedent moved back to Houston from Arizona in July, 1965, after decedent's divorce to W1 on June 22. Decedent's divorce petition against W2 indicates that he and W2 ceased living together as man and wife in or about August, 1965. The judgment granting decedent and W2 a divorce recites that the parties were

married.[1] These last three pieces of evidence at the very least raise a fact issue whether decedent and W2 lived together and represented themselves to be husband and wife between June 22, 1965, and July 19, 1965, thereby entering into a common law marriage. Considering the evidence in the light most favorable to appellant (W4), we find that there is a fact issue concerning whether decedent was married to W2 and, if so, whether that marriage rendered appellee W3's marriage void because he was married to someone else at the time. Because this issue presents a fact question for a jury to decide, the directed verdict was improper. *See Szczepanik,* 883 S.W.2d at 649.

We sustain point of error one.

We reverse the judgment of the trial court and remand this case for a trial on the merits.[2]

COHEN, J., concurs.

COHEN, Justice, concurring.

The divorce decree between Lonnie Jordan and Helen Thompson (W2) states they were married. A valid marriage to Helen Thompson could have happened only after June 22, 1965, when Lonnie divorced W1, and before July 19, 1965, when he ceremonially married W3 (appellee). Lonnie and Helen were not divorced until July 29, 1985. Thus, I believe the marriage to W3 (appellee) was void at its inception on July 19, 1965, TEX. FAM. CODE ANN. § 2.22 (Vernon 1996). The parties agree there was no common-law marriage between Lonnie and W3 (appellee) after July 29, 1985. Moreover, I believe appellee (W3) is estopped from claiming otherwise by the doctrines of res judicata and collateral estoppel. *See Dreyer v. Greene,* 809 S.W.2d 262, 263 (Tex.App.—Houston [1st Dist.] 1991), *aff'd,* 871 S.W.2d 697, 698 (Tex. 1993) (wife barred by statutory res judicata from asserting parentage contrary to trial court's findings in her divorce decree)); *Espree v. Guillory,* 753 S.W.2d 722, 724 (Tex.

App.—Houston [1st Dist.] 1988, no writ) (common-law doctrine of collateral estoppel barred an attack on divorce court's findings that child was legitimate); *Byrd v. Travelers Ins. Co.,* 275 S.W.2d 861, 863 (Tex. App.—San Antonio 1955, writ ref'd n.r.e.) (res judicata barred parents of deceased worker from attacking a divorce decree finding that their son fathered a son during marriage). Lonnie Jordan, having consented to the divorce decree from Helen Thompson (W2), would not have been allowed to collaterally attack it except for voidness, nor should anyone claiming through him, such as appellee, be allowed to do so. That leaves the question of the proper remedy.

In her "Original Petition for Declaratory Judgment," appellant asked the court to declare Lonnie's marriage to W3 (appellee) void because of the prior existing marriage of Lonnie and Helen. However, appellant's "Amended Application to Determine Heirship" does not mention voidness, nor does appellant's "First Amended Original Petition for Declaratory Judgment." These later pleadings control over and completely replace the original petition, which, along with its allegations of voidness, "shall no longer be regarded as a part of the pleading in the record of the cause." TEX. R. CIV. P. 65. Appellant later alleged voidness in her "Contentions," "Contested Issues of Fact," and "Proposed Jury Charge Questions, Instructions and Definitions," but she made no request for rendition in the trial court based on voidness, res judicata, or collateral estoppel. The latter doctrines, res judicata and estoppel, are affirmative defenses that must be pleaded and asserted. TEX. R. CIV. P. 94. Although appellant requests the remedy of rendition on appeal, I cannot conclude that these issues were tried by consent, under TEX. R. CIV. P. 67, because the trial judge was not asked to render judgment due to res judicata, collateral estoppel, or voidness. For that reason, I concur in remanding the

---

1. W4 has not raised the issue of collateral estoppel; therefore, we do not address whether the judgment precludes a collateral attack on the judgment's finding that decedent and W2 were married at least from June 22, 1965, until July 29, 1985.

2. Although appellant prayed for rendition, she would not be eligible for that disposition because she failed to move for instructed verdict.

cause, rather than rendering judgment for appellant.