LIVINGSTON LIVESTOCK
EXCHANGE, INC.,
Appellant,

v.

HULL STATE BANK, Appellee.

No. 09–98–536 CV.

Court of Appeals of Texas,
Beaumont.

Submitted Feb. 3, 2000.

Decided April 13, 2000.

Martha R. Campbell, J. Hoke Peacock II, Orgain, Bell & Tucker, L.L.P., Beaumont, E.R. Norwood, Liberty, for appellant.

Michael D. Matthews, Bill Richey, Bradford K. Downs, Jr., Griffin & Matthews, Beaumont, for appellee.

Before WALKER, C.J., BURGESS and STOVER, JJ.

## OPINION

RONALD L. WALKER, Chief Justice.

Livingston Livestock Exchange, Inc. sued Hull State Bank for violations of the Texas Deceptive Trade Practices Act, breach of contract, fraud, conversion, negligence, and gross negligence in connection with a wire transfer credited to, then debited from, Livingston's account with Hull Bank. The sole issue raised on appeal is whether the trial court erred in granting a directed verdict to Hull Bank on all of Livingston's claims.

In reviewing the granting of an instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Szczepanik v. First Southern Trust Co.*, 883 S.W.2d 648, 649 (Tex.1994). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences, giving the losing party the benefit of all reasonable inferences created by the evidence. *Id.* If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case

must be reversed and remanded for jury determination of that issue. *Id.*

Livingston operates a livestock auction barn. An established customer, Mike Pantalion, had on three prior occasions in the previous two months written checks for insufficient funds that he then covered through wire transfers from the Bank of Santa Fe. On Friday, September 17, 1993, Livingston deposited a $48,492.29 check from Mike Pantalion in Livingston's account at Hull Bank. On Tuesday, September 21, 1993, Linda L. Taylor, who as vice-president and cashier was an authorized officer of Hull Bank, notified Livingston's president and sole shareholder, Aubrey Lee Clamon, that Pantalion's check was being returned for insufficient funds and that the amount of the check would be debited against Livingston's account when the check arrived back at Hull Bank. At some time after 3:00 p.m., Clamon telephoned Pantalion, who stated he would cover the check with a wire transfer the following day. Clamon called Hull Bank and informed them that the check would be covered by means of a wire transfer for the account of Livingston.

On Wednesday, September 22, 1993, Taylor received a telephone call from "Nancy," who identified herself as an employee in the wire transfer department of NationsBank of Houston. This person stated NationsBank had received an incoming wire transfer from the Bank of Santa Fe from Pantalion for the account of Hull Bank and for the further account of Livingston. She informed Taylor of the amount of the wire, that it was from Pantalion through the Bank of Santa Fe for Hull State Bank for the credit of Livingston Livestock, and she "more than likely" gave Taylor the sequence number of the wire, but Taylor did not record the sequence number. Likewise, Taylor did not record Nancy's surname or her extension number at the bank.

Taylor executed the NationsBank payment order by crediting Livingston's account with the full amount of the $48,492.29 wire transfer and entering a corresponding debit to NationBank's wire transfer account. That same morning, Taylor called Clamon and said that she "had the hot check and the wire." Hull Bank debited the returned check, credited the wire transfer to Livingston's account, and mailed Livingston a validated deposit slip for the wire transfer. Hull Bank returned the check to Livingston. Clamon's secretary marked the check void and on Wednesday, September 23, 1993, Livingston mailed the insufficient funds check to Pantalion. Livingston could have cleared the check through prosecution, or by reclearing the check, or by obtaining a cashier's check at the Bank of Santa Fe. On September 22 and 23, 1993, Pantalion had sufficient finds in his bank account at Santa Fe Bank to cover the check. Clamon returned the check to Pantalion because he thought the wire transfer had been received.

Taylor realized the wire transfer was never made when she reconciled Hull Bank's statement with NationsBank on Tuesday, September 28, 1993. Taylor contacted the Bank of Santa Fe and learned that they had never wired the money. At 4:51 p.m. on Thursday, September 30, 1993, Taylor and Dan Wingate, the president of Hull Bank, telephoned Livingston and informed him that the September 22, 1993, wire transfer had not come in. On Friday, October 1, 1993, Hull Bank debited Livingston's account $48,492.29.

According Michael G. Burkhart, president of the Bank of Santa Fe, from his review of the bank's record no $48,492.29 wire transfer originated from the Bank of Santa Fe.

Pantalion had no recollection of any of the wire transfers. Pantalion testified, "As far as I am concerned, it [the $48,-492.29 check] was paid by wire transfer from my bank to Hull Bank. At a later date, Mr. Clamon gave me my check back, you know." Although he did not dispute

his bank's records, Pantalion maintained that based upon his personal records he sent a wire from the Bank of Santa Fe. Had he been told on September 22 or 23 that the wire transfer did not go through, he would have contacted the Bank of Santa Fe and wired the money.

Livingston's expert witness, John Bailey, testified Hull Bank's control procedures in connection with the wire transfer were totally inadequate, in that Taylor did not record the identification number, did not call back to verify the source of the call, and failed to maintain a log including the identity of the person making the call and the sequence number so that the telephone call could be traced to NationsBank.

Hull Bank argues the trial court properly granted a directed verdict on Livingston's claims for conversion, breach of contract, and deceptive trade practices because Hull Bank exercised its contractual and common law right of setoff. Hull Bank failed to exercise that right within the time permitted by banking regulations applicable to collecting on "checks" and "items." *See* 12 C.F.R. § 229.33 (1999); Tex. Bus. & Comm.Code Ann. § 4.202 (Vernon Supp.2000). A "check" does not include a "noncash item" or an item payable in a medium other than United States money; a "noncash item" is an item that would otherwise be a check, except that a passbook or other document is attached, it is accompanied by special instructions, it consists of more than a single thickness of paper, or has not been encoded in magnetic ink with the routing number if the paying bank. 12 C.F.R. § 229.2(k), (u) (1996). An "item" is an instrument or a promise or order to pay money handled by a bank for collection or payment, but does not include a payment order governed by Chapter 4A or a credit or debit card slip. Tex. Bus. & Comm.Code Ann. § 4.104(a)(9) (Vernon Supp.2000).

■ Hull Bank argues the limitations upon its right to setoff do not apply because there was no wire transfer. The viability of Livingston's claims for conversion, breach of contract, and deceptive trade practices depends upon whether there is any evidence of probative force which would support submission to the fact finder of the existence of a transaction upon which the regulations regarding setoff would apply. The Bank of Santa Fe has no record of a wire transfer. On the other hand, Pantalion testified he ordered the Bank of Santa Fe to execute the wire transfer. Taylor received a telephone call that caused her to credit Livingston's account with a wire transfer, but Taylor failed to record the information that would have made it possible to trace the transaction. The possibility may be exceedingly unlikely, given there is no documentary evidence of probative value to support the order from the Bank of Santa Fe, but we cannot say there is no evidence that the transaction never occurred. ` The trial court erred in directing a verdict on Livingston's claims for conversion, breach of contract, and deceptive trade practices.

■ Hull Bank argues there is no evidence of a recklessly or knowingly misrepresented fact by Hull Bank. A representation is reckless: (1) if it is made without any knowledge of the truth and as a positive assertion; (2) if the person making the representation knows that she does not have sufficient information or basis to support it; or (3) if she realizes that she does not know whether or not the statement is true. *Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 527 (Tex.1998). Hull Bank argues there is no evidence Taylor either knew the wire transfer was never sent, or that she had reason to believe that a wire transfer was never sent. Taylor informed Clamon that the wire had arrived at Hull Bank when it had not; although based upon a telephone call from a person whose identity and authority Taylor did not verify, Taylor believed that the wire had been sent, she took no steps to verify that information before representing to Clamon that the transfer had occurred. There is evidence of probative value that Taylor knew

she did not have sufficient information or basis to support her statement to Clamon. The trial court erred in failing to submit Livingston's fraud claim to the jury.

 Hull Bank does not claim there is no evidence of its negligence; rather, it asserts Livingston presented legally insufficient evidence of its damages. Livingston surrendered the check to Pantalion because Taylor represented to Clamon that Hull Bank had the wire transfer funds in its possession. There is evidence in the record that Pantalion had funds available on September 22 and September 23, but that no attempt was made to collect because Clamon relied upon the representations and documentation provided by Hull Bank. Livingston never collected the $48,-492.29. One might infer from the evidence that the surrendered check was worthless, but we must disregard such inferences. There is evidence of probative value that Livingston would have collected the $48,-492.28 if Hull Bank had not represented that the wire transfer had been received. We hold Livingston adduced evidence of damages sufficient to allow its negligence claim to go to the jury.

The issue is sustained. The judgment of the trial court is reversed, and the cause is remanded to the trial court for a new trial on the claims of Livingston Livestock Exchange, Inc., for negligence, breach of contract, conversion, deceptive trade practices, and fraud.

REVERSED AND REMANDED.