COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-01-229-CV
 
RAMONA SMITH           
           
           
           
           
           
      
   APPELLANT
V.
SOUTHWESTERN BELL TELEPHONE       
           
           
           
           
APPELLEES
COMPANY AND STEVEN T. MILLER
------------
FROM THE 393
RD DISTRICT COURT OF DENTON
COUNTY
------------
OPINION
------------
Ramona Smith sued Southwestern Bell
Telephone Company and Steven T. Miller for damages she allegedly suffered as a
result of an automobile accident. The trial court granted Southwestern Bell
summary judgment on Smith's claims against it and granted Miller a directed
verdict on Smith's claims against him. Smith challenges both of these rulings on
appeal. Because we conclude that the directed verdict for Miller was proper, we
will affirm the trial court's judgment without reaching Smith's complaints
regarding the summary judgment for Southwestern Bell.
Smith and Miller were involved in a
four-vehicle car accident on August 28, 1997. Miller was driving a Southwestern
Bell truck and was on his way to work. He hit Smith from behind and admitted
responsibility for the accident. After the accident, Smith was shaken up, but
did not appear to be injured, and her car sustained only minor damage. No one
else involved in the accident claimed to be injured in any way, and there was
very little damage to any of the other vehicles. An ambulance and paramedics
went to the scene of the accident. The paramedics and Miller encouraged Smith to
go to the hospital, but she declined.
Several hours later, Smith went to the
emergency room, complaining of a headache and neck and upper back pain. Smith
also complained of muscle spasms and pain that "kind of like went
everywhere." Smith received several tests and x-rays in the emergency room,
the results of which were normal. The emergency room doctor diagnosed Smith as
having acute cervical strain, prescribed a week's supply of Darvocet and
Flexeril, and referred her to the on-call orthopedist. Her condition at
discharge was listed as "good." Eventually, however, Smith sought
damages from appellees for neck and back pain, numbness in her arms and legs,
migraines, depression, difficulty sleeping, anxiety attacks, shortness of
breath, stiffness that began in February or March 1998, abdominal pain that
began in mid-1998 or 1999, blurred vision that began in late 1999 or early 2000,
a blackout that allegedly occurred in March 2001, and tooth loss due to severe
tooth decay.(1) At trial, nearly four years after
the accident, Smith described herself as "currently disabled" and
testified that she had not been able to work since the accident because of her
injuries.
Before trial, the trial court granted
Southwestern Bell summary judgment on the ground that Miller was not acting in
the course and scope of his employment at the time of the accident. The trial
went forward against Miller alone. After Smith rested, the trial court granted
Miller's oral motion for a directed verdict on the grounds that Smith had failed
to present any evidence that her alleged damages were caused by the accident and
that she had failed to present any evidence that most of her medical expenses
were reasonable and necessary.
In her first issue, Smith complains that
the trial court erred in granting Miller a directed verdict because Smith
presented some evidence at trial that she experienced compensable damages as a
result of the accident.
A directed verdict is proper only under
limited circumstances: (1) the evidence conclusively establishes the right of
the movant to judgment or negates the right of the opponent; or (2) the evidence
is insufficient to raise a fact issue that must be established before the
opponent is entitled to judgment. Prudential Ins. Co. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000); Boswell v. Farm & Home Sav.
Ass'n, 894 S.W.2d 761, 768 (Tex. App.--Fort Worth 1994, writ denied); see
also TEX. R. CIV.
P. 268. In reviewing a directed verdict, we must view the evidence in the light
most favorable to the party against whom the verdict was rendered and disregard
all contrary evidence and inferences. Szczepanik v. First S. Trust Co.,
883 S.W.2d 648, 649 (Tex. 1994); White v. S.W. Bell Tel. Co., 651
S.W.2d 260, 262 (Tex. 1983). Further, we must determine if there is any
conflicting evidence of probative value that raises a material fact issue. White,
651 S.W.2d at 262. If there is any such evidence on any theory of recovery, a
determination of that issue is for the jury. Szczepanik, 883 S.W.2d at
649.
In a personal injury case, a plaintiff
must prove that the defendant's negligence is the proximate cause of her
injuries. Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996); Glenn
v. C & G Elec., Inc., 977 S.W.2d 686, 690 (Tex. App.--Fort Worth 1998,
pet. denied). To establish causation, the plaintiff must prove that the
defendant's conduct caused an event and that this event caused the plaintiff to
suffer compensable injuries. Burroughs Wellcome Co. v. Crye, 907 S.W.2d
497, 499 (Tex. 1995). The causal nexus between the event sued upon and the
plaintiff's injuries must be shown by competent evidence--ordinarily, by the
testimony of a medical expert. Blankenship v. Mirick, 984 S.W.2d 771,
775 (Tex. App.--Waco 1999, pet. denied); Glenn, 977 S.W.2d at 690.
The record shows that Smith had suffered
from virtually all of the ailments for which she sought medical treatment, and
compensation from appellees, for several years before the August 1997 accident.
She had also received on-going medical treatment and medication for migraines,
pain, and depression; yet no doctor had been able to determine the cause of her
alleged pain and suffering. Before the August 1997 accident, one doctor had
diagnosed her with degenerative bone disease, while another had diagnosed her
with rheumatoid arthritis in her neck. In May 1996, Smith underwent surgery to
correct a herniated disc and to remove a bone spur that was causing partial
paralysis on her left side. Smith testified that she felt much better after the
surgery and before the August 1997 accident, but her medical records showed that
she continued to experience migraines, abdominal pain, pain to her lower right
quadrant, pain radiating down into the back of her neck, nausea, vomiting, mild
blurry vision, photophobia, and depression.
Further, Smith acknowledged that she
continued to consult various doctors after the accident--despite normal test
results and assurance from her surgeon that the accident had not undone the
results of her 1996 surgery--because she wanted to know what was causing her
problems. She testified:

        
 I just wanted to find out why. It was confusing to me. They're supposed to be
 doctors. . . . They're supposed to find out what's wrong. . . . I still don't
 know what the problem is.
 
     . . . .
 
        
 . . . I couldn't find out what was wrong. Went to several doctors and nobody
 could tell me what's wrong. Nobody.


At trial, Smith attempted to establish
that her many symptoms were caused by fibromyalgia and that the fibromyalgia was
caused by the August 1997 car accident. Dr. John M. Joseph, Smith's treating
rheumatologist, testified that he first examined Smith in April 1999. At that
time she was "hurting, essentially, [from] head to toe." After
reviewing Smith's history, Dr. Joseph concluded that she was suffering from
fibromyalgia, which was causing most, if not all, of her ailments.
When Smith attempted to introduce evidence
of causation through Dr. Joseph, the trial court repeatedly sustained appellees'
objections to the testimony based on improper foundation. Because the trial
court excluded Dr. Joseph's testimony on causation, Smith did not put on any
expert testimony that her alleged injuries were caused by the 1997 accident.
Smith does not complain on appeal about the trial court's exclusion of Dr.
Joseph's testimony regarding causation. Instead, she argues that such knowledge
was within the jurors' common knowledge. We disagree.
Proof of causation cannot turn upon
speculation and conjecture. Leitch, 935 S.W.2d at 119. A possibility
that an accident may have contributed to claimed injuries is not sufficient to
show causation; a reasonable probability is required. Waltrip v. Bilbon
Corp., 38 S.W.3d 873, 883 (Tex. App.--Beaumont 2001, pet. denied). Lay
testimony is sufficient to establish a causal nexus only in those cases in which
general experience and common sense will enable a lay person to determine, with
reasonable probability, the causal relationship between the event and the
condition. Blankenship, 984 S.W.2d at 775. The lay testimony must
establish a sequence of events that produces a strong, logically traceable
connection between the event and the condition. Id.
The lay testimony in this case--that
Miller hit Smith's car from behind, that Smith was shaken up, but did not appear
to be injured, and that her car sustained only minor damage--does not produce a
strong, logically traceable connection between the 1997 accident and Smith's
injuries. Smith herself testified that she did not know what was causing her
pain. Further, Dr. Joseph admitted that the cause of fibromyalgia was not known
and that there was no documented medical evidence that fibromyalgia could be
caused by a car accident.(2) "If the experts
cannot predict probability in these situations, it is difficult to see how
courts can expect a jury of laymen to be able to do so." Parker v.
Employers Mut. Liab. Ins. Co., 440 S.W.2d 43, 49 (Tex. 1969).
Smith also contends that the billing
records from certain health-care providers, which were admitted at trial,
provided some evidence that she suffered injuries for which the jury could have
awarded her damages. Medical billing records alone, however, do not establish
causation. Glenn, 977 S.W.2d at 689-90. Moreover, even if the emergency
room diagnosis of "acute cervical strain" is some evidence that
Smith's head and neck pain immediately following the 1997 accident were caused
by the accident itself, it is legally insufficient to establish that Smith's
many other injuries were caused by the accident. Proof that an injury to a
specific body part extends to and affects the body generally must be supported
by expert medical testimony and is not within the general experience of the
jury. N. River Ins. Co. v. Gomez, 632 S.W.2d 678, 680 (Tex. App.--Tyler
1982, no writ). In addition, the emergency room billing records were not among
the few medical billing records admitted at trial; the trial court sustained
Miller's objections to these records, and Smith does not complain of this ruling
on appeal. Thus, there is no evidence concerning what medical expenses Smith
incurred in the emergency room. Even if there were, medical billing records do
not establish that the medical expenses listed therein were reasonable and
necessary. Glenn, 977 S.W.2d at 689-90.
Having reviewed the evidence in the light
most favorable to Smith and disregarded all contrary evidence and inferences, we
hold that the directed verdict for Miller was proper. Szczepanik, 883
S.W.2d at 649; White, 651 8S.W.2d at 262. Consequently, we overrule
Smith's first issue. In light of our holding that the directed verdict was
proper, we need not consider Smith's remaining issue, in which she challenges
the summary judgment for Southwestern Bell. We affirm the trial court's
judgment.
                                                                               
JOHN CAYCE
                                                                               
CHIEF JUSTICE
PANEL A: CAYCE, C.J.; DAY and GARDNER, JJ.
[Delivered March 13, 2003]

1. Southwestern Bell paid to have Smith's car fixed and
also paid for a rental car while her car was being repaired. Consequently, Smith
did not seek to recover from appellees for the damage to her car.
2. Dr. Joseph testified:

 I would say about 50 percent of patients
 [with fibromyalgia] will date it to some physical injury prior to the onset of
 these symptoms. That's about all I can say as far as the onset.
         .
 . . .
 . . . I don't know I can say that's a
 reason. I think truly the cause of fibromyalgia is not known. I don't think
 there is any way to know if it is sparked by viruses. . . .
 
 . . . .
 
 . . . I don't think there is any
 evidence that we know who gets it or what causes it. So I cannot say that, you
 know, that is specific type of - an onset as a result of some injury or
 disease or condition.

He also admitted on voir dire examination
outside the jury's presence that, despite a significant amount of research, no
peer-reviewed study had determined that fibromyalgia could be caused by trauma
such as a car accident.