MEMORANDUM OPINION


No. 04-03-00177-CV


Dora RODRIGUEZ and Hortencia Perea,

Appellants


v.


URBAN CONCRETE CONTRACTORS, LTD.,

Appellee


From the 408th Judicial District Court, Bexar County, Texas


Trial Court No. 2001-CI-17230


Honorable Phylis J. Speedlin, Judge Presiding (1)



Opinion by: Catherine Stone, Justice


Sitting: Alma L. López, Chief Justice

 Catherine Stone, Justice

 Paul W. Green, Justice


Delivered and Filed: April 28, 2004


AFFIRMED

 This is an appeal from a directed verdict granted in favor of Urban Concrete Contractors,
Ltd. We hold that an instructed verdict was proper under the circumstances; therefore, we affirm
the trial court's judgment. 


Background

 On April 20, 2000, Ronald Urbanczyk had one of the mechanics from his concrete business,
Urban Concrete Contractors, Ltd. ("UCC"), (2) replace the hitch on a trailer that was used at his ranch.
The hitch the mechanics placed on the trailer had a warning label on it, warning "[c]lose securely
on ball and insert pin behind collar and lock before moving trailer." It is unclear whether there was
a pin behind the collar of the hitch when the mechanics returned the trailer to Ronald. 

 On October 14, 2000, nearly six months after UCC's employees replaced the hitch on the
ranch trailer, Ronald's wife, Terry, needed to use the trailer to pick up building supplies for her son.
Jose López, a UCC employee who was at the Urbanczyk's ranch to borrow some tools, attached the
trailer to Terry's pickup truck. López, however, did not insert a safety pin into the hitch as
recommended by the manufacturer's warning label when he attached the trailer. He merely attached
the hitch and used safety chains to secure the trailer to Terry's vehicle. Another UCC employee,
John Bruner, witnessed López attach the trailer to the vehicle. According to Bruner, the trailer was
properly attached to Terry's vehicle. It is undisputed that López and Bruner were not on the ranch
in their capacity as UCC employees when the trailer was attached to Terry's truck. 

 After Terry drove approximately 27 miles over some rough roads, the trailer became detached
from Terry's vehicle. Once detached, the trailer crossed the median of the roadway and drifted into
the opposing lanes of traffic, colliding head on with Dora Rodriguez and Hortencia Perea. The
impact of the collision caused Rodriguez and Perea's vehicle to roll over and collide with another
vehicle. Rodriguez and Perea were both seriously injured.

 Rodriguez and Perea filed suit against Terry and UCC for the injuries they sustained during
their collision with the ranch trailer. Rodriguez and Perea alleged UCC was liable for the accident
under the doctrine of respondeat superior because its employee negligently attached the trailer to
Terry's vehicle on the day of the accident. They alleged UCC was also liable because its mechanics
negligently installed the replacement hitch six months before the accident. 

 At the conclusion of the evidentiary portion of the underlying proceeding, UCC filed a
motion for a directed verdict against Rodriguez and Perea "based upon [Rodriguez and Perea's]
allegations of respondeat superior." The trial court granted UCC's motion because it concluded
there was no evidence that UCC's employees were acting in the furtherance of the business of the
company when they attached the trailer to Terry's vehicle on October 14, 2000 or when they replaced
the hitch on the trailer on April 20, 2000. After the trial court granted UCC's directed verdict, a jury
returned a verdict in Terry's favor. 

 On appeal, Rodriguez and Perea challenge the trial court's decision to grant UCC's motion
for directed verdict. Rodriguez and Perea contend a directed verdict was improper because the
record contains more than a scintilla of evidence that UCC's employees were acting in furtherance
of UCC's business when they replaced the hitch on April 20, 2000. On appeal, Rodriguez and Perea
do not challenge the trial court's conclusion that López and Bruner were not acting in furtherance
of UCC's business when they attached the trailer to Terry's vehicle on the day of the accident.
Therefore, we limit our review to whether UCC was entitled to an instructed verdict regarding the
acts occurring on April 20, 2000.



Standard of Review

 When reviewing an instructed verdict, we must determine whether there is any evidence of
probative force to raise a fact issue on the material questions presented. Szczepanik v. First S. Trust
Co., 883 S.W.2d 648, 649 (Tex. 1994). We must consider all the evidence in the light most
favorable to the party against whom the verdict was directed, disregarding all contrary evidence and
inferences and giving the losing party the benefit of all reasonable inferences created by the evidence.
Id. "If there is any conflicting evidence of probative value on any theory of recovery, an instructed
verdict is improper and the case must be reversed and remanded for jury determination of that issue."
Id. A directed verdict is proper when: (1) the opponent's pleadings are insufficient to support a
judgment; (2) the evidence conclusively proves a fact that establishes a party's right to judgment as
a matter of law; or (3) the evidence offered on a cause of action is insufficient to raise an issue of
fact. Rudolph v. ABC Pest Control, Inc., 763 S.W.2d 930, 932 (Tex. App.--San Antonio 1989, writ
denied). "We must affirm a directed verdict if the record discloses a ground that establishes, as a
matter of law, that the movant was entitled to judgment, even though the ground was not embodied
in the motion for directed verdict." Gonzales v. Willis, 995 S.W.2d 729, 740 (Tex. App.--San
Antonio 1999, no pet.).

Preservation of Appellate Complaint

 As a preliminary matter, we must address UCC's contention that Rodriguez and Perea waived
their appellate complaint because they never claimed in the trial court that UCC negligently installed
the replacement hitch on April 20, 2000. Rodriguez and Perea's pleadings specifically allege that
UCC was negligent by: failing to insert a safety pin in the tongue and ball of the trailer hitch; failing
to inspect whether or not the safety pin was properly inserted in the tongue and ball of the hitch;
failing to properly and securely attach the trailer to the truck being operated by Terry Urbanczyk;
failing to properly secure safety chains between Terry's truck and the trailer; and altering or
modifying the trailer hitch by removing the safety pin from the hitch. (3) According to UCC, none of
these allegations can be construed as a complaint that UCC was negligent because it installed a hitch
without a safety pin. We disagree.

 If we liberally construe Rodriguez's and Perea's pleadings, it is arguable their appellate
assertion does in fact correlate to one of the specific allegations raised in their pleadings. See Roark
v. Allen, 633 S.W.2d 804, 809 (Tex. 1982) (recognizing that, in the absence of special exceptions,
a court should construe a pleading liberally in favor of the pleader). Rodriguez and Perea's assertion
that UCC is liable because its employees negligently installed a trailer hitch without a safety pin
correlates to their trial court assertion that UCC is liable because its employees failed to insert a
safety pin in the tongue and ball of the trailer hitch. Therefore, we do not believe Rodriguez and
Perea waived their right to raise their appellate complaint.

Course & Scope of Employment

 Having resolved this preliminary matter, we must next determine whether the record contains
more than a scintilla of evidence that UCC employees were acting in the course and scope of their
employment when they replaced the hitch on the trailer on April 20, 2000. In making this
determination we must be mindful of the standard of review. Thus we review the evidence in the
light most favorable to the non-movants, Rodriguez and Perea, we disregard all contrary evidence
and inferences, and we indulge all reasonable inferences created by the evidence in favor of the non-movants. See Szczepanik, 883 S.W.2d at 649.

 The documentary evidence reveals, and Ronald Urbanczyk agreed, that the hitch was
replaced on the trailer at the UCC yard by UCC employees. Although Ronald could not recall if he
personally asked an employee to do the work, he acknowledged that the work would have been done
at the request of a UCC employee. He also testified that A.J. Bruner was employed by UCC and was
his sole employee at the Urbanczyk ranch. Bruner performed various ranch-related tasks at the
ranch; he also performed tasks at a hunting lease in El Indio, Texas and at other leases maintained
by Ronald. From the record it appears that both the ranch and the hunting lease were used, at least
to some extent, to entertain UCC customers. As Ronald described this aspect of Bruner's duties,
Bruner was to bring UCC customers to the hunting lease to "hunt and show them a good time." (4) In
performing his various duties related to the ranch and the leases, Bruner used the trailer to haul
brush. Bruner stated that when he was not at the ranch he "would haul materials around the job sites
and stuff . . . ." This testimony provides more than a scintilla of evidence that when the trailer hitch
was replaced at the UCC yard, it was done so by UCC employees in the course and scope of UCC's
business. 

 At the hearing on the motion for directed verdict, the trial court focused on the lack of
evidence to support a conclusion that the UCC employees were acting in the course and scope of
their employment when they attached the trailer to Terry's vehicle on the day of the accident. We
agree that such evidence is lacking. Nonetheless, during the hearing, counsel for Perea and
Rodriguez pointed to evidence that the ranch operations were related to the concrete business to a
certain extent. More importantly, counsel raised the issue of course and scope at the time the hitch
was installed, reminding the court that the evidence showed that the hitch was changed out at the
UCC yard. While the trial court returned to the issue of course and scope on the day of the accident,
the argument of counsel was sufficient to raise the question of course and scope at the time the hitch
was replaced.

Proximate Cause

 UCC contends that regardless of any evidence or reasonable inferences that its employees
acted within the course and scope of their employment, the record contains no evidence that the
failure to have a safety pin in place was a proximate cause of the accident. Accordingly, UCC
contends the directed verdict was proper for this reason as well.

 UCC points to the testimony of the investigating police officer, Officer Mark Duke, that
immediately after the accident the hitch was in the closed and latched position. Based on the design
of the hitch, Officer Duke testified that he believed it was "next to impossible for [the hitch] to latch
itself back up the way that type of hitch is made." UCC thus argues that the only reasonable
inference to be derived from this record is that the hitch never opened, and that the failure to have
a safety pin was thus immaterial. 

 Viewing the evidence in the light most favorable to Rodriguez and Perea, we cannot find any
evidence to indicate whether the absence of the safety pin had any effect on the event giving rise to
this litigation. Clearly the hitch malfunctioned, because the trailer separated from the truck. Yet
Rodriguez and Perea had to show more than a malfunction. Based on the state of their pleadings and
claims, in order to avoid a directed verdict, Rodriguez and Perea had to produce some evidence,
more than a scintilla, that the failure to have a safety pin in place was a proximate cause of the
collision. There is no evidence, however, indicating whether the malfunction was because the hitch
was defective, the pin was missing, or the hitch and trailer were improperly attached to the truck.
No expert witness testified about the hitch and its operation. Although several witnesses
acknowledged that the safety pin is a safety feature designed to prevent the collar from sliding back
and allowing the hitch to open, there was no testimony indicating that the missing safety pin was a
factor in the disengaging of the trailer.

Conclusion

 Because the record contains no evidence from which it can be concluded or reasonably
inferred that the absence of a safety pin on the hitch was a proximate cause of the accident in
question, we hold the trial court properly granted UCC a directed verdict. 


 Catherine Stone, Justice





1. The Honorable Rebecca Simmons now presides over the 408th Judicial District Court of Bexar County, Texas.
2. UCC is a Texas limited partnership whose principal business is forming and pouring concrete slabs for
residential and commercial projects.
3. Although Rodriguez and Perea each filed separate petitions in the underlying cause, their allegations against
UCC are virtually identical.
4. Jose López testified that he did not know what the business arrangement was regarding the ranch and UCC,
although he did acknowledge that taking people hunting was "on company business."