# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00235-CV

**Democracy Coalition, Stefan Wray, Risako Kurono, Matthew Korn, Kristan Barber, Chandra Ward, Kristin Richardson, Lucinda Beringer, Sonia Santana, Douglas Foxvog, Ann Stark, and Susana Almanza, Appellants**

**v.**

**The City of Austin, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT NO. GN101586, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

--------------------
## CONCURRING OPINION
--------------------

I join Justice Smith=s opinion but write separately to emphasize that our holding regarding appellants= state constitutional claim for declaratory relief should not be viewed as categorically precluding law enforcement officials from undertaking reasonable means of crowd control at protests. Stated another way, our holding is not that the City of Austin and its police officers conclusively violated appellants= constitutional rights, but that the City=s lawyers did not adduce evidence at trial that conclusively foreclosed

the appellants= state constitutional claim as a matter of law, as is required to sustain the directed verdict in this case. The merits of that claim thus remains to be determined by the trial jury.

To summarize the evidentiary record before us, viewed in the light most favorable to appellants, as is required when reviewing a directed verdict:[1] A group of protestors was singled out and their movement restricted based on the views they espoused; demonstrators who espoused an opposing view, as well as individuals unconnected to the debate, were permitted to enter a more favorable area for protesting; and individual members of the disfavored group were permitted to remain in the more favorable protest area so long as they did not advocate their views. Standing alone, such actions are evidence of viewpoint-based discrimination prohibited by the first amendment.[2] *See Members of City Council v.*

---

[1] *E.g.*, *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

[2] I agree with Justice Smith that we must assume the Texas free speech clause is coextensive with the first amendment for purposes of this case, as appellants have advanced no reason to think otherwise. *See Operation Rescue v. Planned Parenthood, Inc.*, 975 S.W.2d 546, 559 (Tex. 1998)(AIt is possible that Article I, Section 8 may be more protective of speech in some instances than the First Amendment, but if it is, it must be because of the text, history, and purpose of the provision, not just simply *because*.@) (emphasis in original); *Texas Dept. of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003) (After deciding case based on Unites States Constitution, court stated, AHere, Barber has not articulated

*Taxpayers for Vincent*, 466 U.S. 789, 804 (1984) (A[t]he First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.@); *see also Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 642 (1994) (under first amendment, government cannot Asuppress, disadvantage, or impose differential burdens upon speech because of its content.@).

---

any reasons based on the text, history, and purpose of Article I, section 8 to show that its protection of noncommercial speech is broader than that provided by the First Amendment under the circumstances presented.@).

On a different record, at least some of these sorts of restrictions conceivably could have been justified as a matter of law under the first amendment. Reasonable time, place, and manner restrictions may be imposed on expressive activity, *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984), and some facially content-based restrictions of expression may be deemed content-neutral (and thus subject to less exacting constitutional scrutiny) when motivated by a permissible content-neutral purpose. *See Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (A[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others@). Furthermore, even content-based restrictions on expression may be justified when shown to have been precisely drawn to serve a compelling state interest. *See R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992); *Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm=n,* 447 U.S. 530, 540 (1980). But that is not the record before us. The City vaguely referenced a professed interest in protecting the security of President Bush, but did not fully develop that theory.[3] It likewise did little to develop other potential justifications, such as those related to public safety and order. Accordingly, I agree with Justice Smith that we should reverse the directed verdict on appellants= suit for declaratory relief on their state constitutional claim.

I also echo Justice Smith=s observations regarding the nature of our constitutional inquiry. Slip op. at 25. Our duty to apply constitutional principles often arises amid raging political debate, yet our

---

[3] Nor did the City fully develop whether or how it or its police officers were merely following the directives of Secret Service, or the validity of such a justification.

4

outcomes Acannot be determined by the subject matter of the dispute, nor can the personal sympathies of judges to one side or the other affect their duty to draw lines.@ *Id.* (quoting *Operation Rescue-Nat=l v. Planned Parenthood of Houston & Southeast Tex., Inc.*, 975 S.W.2d 546, 555-56 (Tex. 1998)).  Our constitution, after all, is intended to embody timeless foundational principles of our body politic; its meaning does not change with each fleeting controversy of the day.  In the next case, moreover, the Asides@ may well be reversed.

Accordingly, I respectfully concur in the opinion and judgment.

Bob Pemberton, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Filed:   July 15, 2004

5