TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-03-00235-CV







Democracy Coalition, Stefan Wray, Risako Kurono, Matthew Korn, Kristan Barber,

Chandra Ward, Kristin Richardson, Lucinda Beringer, Sonia Santana,

Douglas Foxvog, Ann Stark, and Susana Almanza, Appellants


v.


The City of Austin, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. GN101586, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING







CONCURRING OPINION




 I join Justice Smith's opinion but write separately to emphasize that our holding
regarding appellants' state constitutional claim for declaratory relief should not be viewed as
categorically precluding law enforcement officials from undertaking reasonable means of crowd
control at protests. Stated another way, our holding is not that the City of Austin and its police
officers conclusively violated appellants' constitutional rights, but that the City's lawyers did not
adduce evidence at trial that conclusively foreclosed the appellants' state constitutional claim as a
matter of law, as is required to sustain the directed verdict in this case. The merits of that claim thus
remains to be determined by the trial jury.

 To summarize the evidentiary record before us, viewed in the light most favorable
to appellants, as is required when reviewing a directed verdict: (1) A group of protestors was singled
out and their movement restricted based on the views they espoused; demonstrators who espoused
an opposing view, as well as individuals unconnected to the debate, were permitted to enter a more
favorable area for protesting; and individual members of the disfavored group were permitted to
remain in the more favorable protest area so long as they did not advocate their views. Standing
alone, such actions are evidence of viewpoint-based discrimination prohibited by the first
amendment. (2) See Members of City Council v. Taxpayers for Vincent, 466 U.S. 789, 804 (1984)
("[t]he First Amendment forbids the government to regulate speech in ways that favor some
viewpoints or ideas at the expense of others."); see also Turner Broad. Sys., Inc. v. FCC, 512 U.S.
622, 642 (1994) (under first amendment, government cannot "suppress, disadvantage, or impose
differential burdens upon speech because of its content.").

 On a different record, at least some of these sorts of restrictions conceivably could
have been justified as a matter of law under the first amendment. Reasonable time, place, and
manner restrictions may be imposed on expressive activity, Clark v. Cmty. For Creative
Non-Violence, 468 U.S. 288, 293 (1984), and some facially content-based restrictions of expression
may be deemed content-neutral (and thus subject to less exacting constitutional scrutiny) when
motivated by a permissible content-neutral purpose. See Ward v. Rock Against Racism, 491 U.S.
781, 791 (1989) ("[a] regulation that serves purposes unrelated to the content of expression is
deemed neutral, even if it has an incidental effect on some speakers or messages but not others"). 
Furthermore, even content-based restrictions on expression may be justified when shown to have
been precisely drawn to serve a compelling state interest. See R.A.V. v. City of St. Paul, 505 U.S.
377, 382 (1992); Consol. Edison Co. of N.Y., Inc. v. Pub. Serv. Comm'n, 447 U.S. 530, 540 (1980). 
 But that is not the record before us. The City vaguely referenced a professed interest
in protecting the security of President Bush, but did not fully develop that theory. (3) It likewise did
little to develop other potential justifications, such as those related to public safety and order. 
Accordingly, I agree with Justice Smith that we should reverse the directed verdict on appellants'
suit for declaratory relief on their state constitutional claim. 

 I also echo Justice Smith's observations regarding the nature of our constitutional
inquiry. Slip op. at 25. Our duty to apply constitutional principles often arises amid raging political
debate, yet our outcomes "cannot be determined by the subject matter of the dispute, nor can the
personal sympathies of judges to one side or the other affect their duty to draw lines." Id. (quoting
Operation Rescue-Nat'l v. Planned Parenthood of Houston & Southeast Tex., Inc., 975 S.W.2d 546,
555-56 (Tex. 1998)). Our constitution, after all, is intended to embody timeless foundational
principles of our body politic; its meaning does not change with each fleeting controversy of the day. 
In the next case, moreover, the "sides" may well be reversed. 

 Accordingly, I respectfully concur in the opinion and judgment.



 

 Bob Pemberton, Justice

Before Justices B. A. Smith, Patterson and Pemberton

Filed: July 15, 2004

1. E.g., Szczepanik v. First S. Trust Co., 883 S.W.2d 648, 649 (Tex. 1994). 
2. I agree with Justice Smith that we must assume the Texas free speech clause is coextensive
with the first amendment for purposes of this case, as appellants have advanced no reason to think
otherwise. See Operation Rescue v. Planned Parenthood, Inc., 975 S.W.2d 546, 559 (Tex. 1998)("It
is possible that Article I, Section 8 may be more protective of speech in some instances than the First
Amendment, but if it is, it must be because of the text, history, and purpose of the provision, not just
simply because.") (emphasis in original); Texas Dept. of Transp. v. Barber, 111 S.W.3d 86, 106
(Tex. 2003) (After deciding case based on Unites States Constitution, court stated, "Here, Barber has
not articulated any reasons based on the text, history, and purpose of Article I, section 8 to show that
its protection of noncommercial speech is broader than that provided by the First Amendment under
the circumstances presented.").
3. Nor did the City fully develop whether or how it or its police officers were merely
following the directives of Secret Service, or the validity of such a justification.