Affirmed in Part and Reversed and Remanded in Part and Opinion filed
August 28, 2003














Affirmed in Part and Reversed and Remanded in Part and Opinion filed August 28, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00006-CV

____________

 

RENTE COMPANY AND MIKE KISZKIEL, Appellants

 

V.

 

TRUCKERS EXPRESS, INC., Appellee

 

_____________________________________________

 

On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 98-55181

 

_____________________________________________

 

O P I N I O
N

            This case arises out of a business
dispute between appellee Truckers Express, Inc. and
appellant Rente Company and its owner, appellant Mike
Kiszkiel.  The
trial court granted Truckers’s motion for directed
verdict as to its promissory-note claim against Rente
and Kiszkiel, refused to submit jury questions as to Rente’s conversion and fraud claims against Truckers, and submitted
jury questions as to whether Rente or Truckers
breached the equipment lease agreement between them.  We hold that the trial court erred in
granting a directed verdict as to the note claim and in refusing to submit a
jury question as to the conversion claim, but that it did not err by refusing
to submit the fraud question.  We
conclude the evidence is sufficient to support the jury’s finding that Truckers
did not breach the lease agreement, but that the evidence is insufficient to
support the damage finding regarding Rente’s
breach.  Therefore, we reverse the trial
court’s judgment on Rente’s claim for conversion of
the equipment and Truckers’s breach-of-contract
claim, sever these claims, and remand them for a new trial.  We affirm the remainder of the trial court’s
judgment. 

                              I.  Factual and Procedural Background

            After negotiating the terms
of a business relationship, Rente and Truckers signed
a letter agreement dated February
 16, 1998, and then an Independent Contractor Equipment Lease
Agreement dated February
 19, 1998 (collectively referred to hereinafter as the “Lease
Agreement”).[1]  Pursuant to the Lease Agreement, Rente had an exclusive arrangement under which it leased
more than thirty truck tractors and more than thirty truck trailers to Truckers.  As part of its obligations under this
contract, Truckers handled administrative details for Rente,
such as insurance, payroll, cash advances, and dispatch.  Truckers was
obligated to pay Rente a percentage based on a
calculation of the revenue generated by the leased equipment.  Rente was
responsible for paying lenders for amounts owed on the equipment and for paying
all costs of operation of the equipment, including costs for fuel, tires, tire
repairs, maintenance, accessories needed to operate the equipment, taxes,
assessments, fines, and tolls.  

            Truckers set up two accounts for Rente: (1) a general-ledger account and (2) a
contractor-settlement account.  Truckers
posted on the general-ledger account costs and credits that were unrelated to
freight, such as commissions.  Truckers
documented freight-related items, such as freight revenues and fuel costs, in
the contractor-settlement account.  

            Shortly after the execution of the
Lease Agreement, Truckers loaned Rente and Kiszkiel $30,000 to help them pay off creditors and avoid
possible repossession of some of the leased equipment.  The parties documented this loan with a
promissory note (hereinafter “Note”). 
Truckers later loaned more money to Rente and
also advanced payments to Rente’s creditors.

            In March of 1998, Rente and Truckers discussed the possibility of Rente setting up a lease-purchase program with its truck
drivers.  Under this proposed program,
(1) Rente would lease individual trucks to drivers
with an option for the drivers to purchase the trucks and with the
understanding that the drivers would sublease the trucks to Truckers; (2) the
drivers would be responsible for maintaining and repairing the leased equipment
and paying taxes; and (3) Rente would receive lease
payments from the drivers and a three percent commission.  There is conflicting testimony regarding the
lease-purchase program.  Although Rente admits that it agreed to execute a lease-purchase
agreement with one of its drivers, Rente claims that
without its  knowledge
or consent, Truckers duplicated the signature page of this one lease-purchase
agreement and attached a copy of it to other such documents, resulting in
“lease-purchase agreements” with numerous other Rente
drivers.  Truckers
asserts that Rente entered into these
lease-purchase agreements with its drivers and that these agreements changed
the status of the drivers from Rente employees to
independent contractors, who were leasing the equipment from Rente with an option to purchase.  

            Dissatisfied with its relationship
with Truckers and the amount of money it was receiving from the parties’
business arrangement, Rente terminated the Lease
Agreement on April 30,
 1998, effective immediately. 
At that time, Rente demanded that Truckers
return all of Rente’s equipment.  Based on Kiszkiel’s testimony, Rente
recovered, at most, ten truck tractors and ten truck trailers from Truckers.  Truckers asserts
that it was not responsible for returning any of the equipment because there is
no provision for the return of the equipment in the Lease Agreement.  

            Rente
complains that after termination of the Lease Agreement, Truckers continued to
use Rente’s equipment without compensating Rente.  Truckers asserts that any equipment that it used had been
leased by Rente to the respective drivers, who then
subleased the equipment to Truckers.  

            Truckers sued Rente
and Kiszkiel asserting breach-of-contract claims on
both the Note and the Lease Agreement.  Rente filed a counterclaim, asserting, among other things,
claims for breach of the Lease Agreement, fraud, and conversion.  In the first trial in this case, the jury
found in Rente’s favor on its claims for fraud and
breach of contract, and in Truckers’s favor on the
Note claim.  The trial court granted a
new trial on its own motion. 

            In the second trial, the trial court
directed a verdict finding Rente and Kiszkiel liable on the Note claim, and the trial court
refused to charge the jury on Rente’s conversion and
fraud claims.  The jury found damages of
$44,676.71 for Truckers’s Note claim.  Additionally, the jury found that both Rente and Kiszkiel entered into
the Lease Agreement with Truckers, that Rente and  Kiszkiel
breached the Lease Agreement, causing $25,000 in damages, and that Truckers did
not breach the Lease Agreement.  The trial
court signed a judgment in favor of Truckers and against Rente
and Kiszkiel for $67,676.71, plus interest. 

                                                       II.  Issues Presented

            On
appeal, Rente and Kiszkiel
assert six issues:

 

1.         Did
the trial court err in granting a directed verdict as to liability on the Note
claim? 

2.         Did
the trial court err in refusing to submit a jury question on conversion?

3.         Did
the trial court err in refusing to submit a jury question on fraud?

4.         Is
there no evidence, or alternatively, factually insufficient evidence, to support
the jury’s damages finding on the Note claim?

5.         Is
there no evidence, or alternatively, factually insufficient evidence, to
support the jury’s damages finding on Truckers’s
claim for breach of the Lease Agreement?

6.         Did
Rente conclusively establish that Truckers breached
the Lease Agreement?  Alternatively, is
the jury’s finding that Truckers complied with the Lease Agreement against the
great weight and preponderance of the evidence?

 

                                                  III.  Standards of Review

            In
reviewing the first three issues, we must determine whether there is any
evidence of probative force to raise a fact issue on the material questions
presented.  See Latham v. Castillo, 972 S.W.2d 66, 68 (Tex. 1998);  Szczepanik v. First Southern Trust
Co., 883 S.W.2d 648, 649 (Tex. 1994).  We consider
all of the evidence in the light most favorable to Rente
and Kiszkiel and disregard all contrary evidence and
inferences; we give Rente and Kiszkiel
the benefit of all reasonable inferences created by the evidence.  See Szczepanik, 883 S.W.2d at 649.  If there is any conflicting evidence of
probative value, then we must reverse and remand for a jury determination of
that issue.  Id. 

            In reviewing the legal sufficiency
in the fifth issue, we view the evidence in a light that tends to support the
disputed findings and disregard all evidence and inferences to the
contrary.  See Lee Lewis Constr.,
Inc. v. Harrison, 70 S.W.3d
778, 782 (Tex. 2001).  If more than a
scintilla of evidence exists, it is legally sufficient.  Id.  More than a scintilla of evidence exists if
the evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about a vital fact’s existence.  Id. at 782–83.  

            In reviewing the legal sufficiency
in the sixth issue, we must determine if Rente and Kiszkiel have demonstrated that the evidence establishes,
as a matter of law, all vital facts in support of their breach-of-contract
claim under the Lease Agreement.  See Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.
1989).  In reviewing this “matter of law”
challenge, we must first examine the record for evidence that supports the
finding, while ignoring all evidence to the contrary.  See id.
If there is no evidence to support the finding, we then must examine the entire
record to determine if the contrary proposition is established as a matter of
law.  See
id. The issue should be sustained only if the contrary proposition is
conclusively established.  See Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983).

            In reviewing the factual sufficiency
of the evidence under the fifth and sixth issues, we examine the entire record,
considering both the evidence in favor of, and contrary to, the challenged
findings.  See Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).  After considering and weighing
all the evidence, we set aside a fact finding only if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust.  See
Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex.
1986).  The trier
of fact is the sole judge of the credibility of the witnesses and the weight to
be given to their testimony.  GTE Mobilnet
of S. Tex. v. Pascouet, 61 S.W.3d 599, 615–16
(Tex. App.—Houston [14th Dist.] 2001, pet. denied).  We may not substitute our own judgment for
that of the trier of fact, even if we would reach a
different answer on the evidence.  Maritime Overseas Corp. v.
Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  The amount of
evidence necessary to affirm a judgment is far less than that necessary to
reverse a judgment.  Pascouet, 61
S.W.3d at 616. 

                                               IV.  Analysis
and
Discussion

A.        Did the trial court err in granting a directed verdict as to
liability on the Note claim? 

 

            In their first issue, Rente and Kiszkiel challenge the
trial court’s directed verdict that they are liable on the Note.  In response, Truckers asserts Rente and Kiszkiel have waived
this argument because (1) they are arguing that they paid the Note but payment
is an affirmative defense that they did not plead; and (2) they did not request
a jury instruction regarding the payment issue. 
Rente and Kiszkiel
assert that there was a fact issue on the material question of what amount, if
any, was due and owing under the Note, making a directed verdict improper.  See Szczepanik, 883 S.W.2d at 649.  Rente and Kiszkiel base this argument on testimony by Tara Scott, Truckers’s accountant, that Truckers posted the debt from
the Note as a debit in Rente’s general-ledger account
and then offset the entire amount against commissions, rentals, and other
amounts Truckers owed Rente.  We find that, under these facts, Rente and Kiszkiel did not have
to plead payment.  See Derbigny v.
Bank One, 809 S.W.2d 292, 294 (Tex. App.—Houston [14th Dist.] 1991, no
writ) (stating general denial puts in issue amount due and owing under Note).  Further, Rente and Kiszkiel did not need to request a jury instruction to
complain of the trial court’s granting of a directed verdict.  See Field v. AIM Management Group, Inc., 845 S.W.2d 469, 473 (Tex.
App.—Houston [14th Dist.] 1993, no writ).  Accordingly, we find no waiver.

            Regarding the merits of the first
issue, we hold that the trial court erred in granting a directed verdict as to
liability on the Note claim.  During Truckers’s case-in-chief, Kiszkiel
testified that he had “not paid [the Note] back.”  However, later in Truckers’s
case-in-chief, Truckers’s accountant (Scott)
testified that Truckers posted the debt from the Note as a debit in the
general-ledger account for Rente.  Truckers’s exhibit
number 68, which was admitted in evidence, documents this general-ledger
account and indicates that Truckers posted the amount of the Note as a debit in
the general-ledger account, offsetting this amount against credits that
Truckers owed Rente. 
After reviewing this evidence under the appropriate standard of review,
we conclude that there was evidence of probative force to raise a fact issue
regarding the amount due and owing under the Note and that the trial court
erred by granting a directed verdict in Truckers’s
favor on this claim.  See Szczepanik,
883 S.W.2d at 649. 
Accordingly, we sustain the first issue, reverse that part of the trial
court’s judgment, and remand for a jury determination of all
of Truckers’s Note claim.[2]  

 

B.  Did the
trial court err in refusing to submit the conversion claim to the jury?

            In the second issue, Rente asserts the trial court erred in refusing its
proposed liability and damages questions on Rente’s
conversion claim.  Rente
asserts that there was probative evidence that raised
a fact issue regarding its conversion claim and that the trial court should
have submitted the issue to the jury.  Truckers argues there was no evidence of the essential
elements of title and right to possession and, as a matter of law, Rente cannot maintain an action for conversion of
money.  

            Conversion is the unauthorized
exercise of dominion and control over property inconsistent with or to the
exclusion of another’s superior rights in that property.  Vickery v. Texas Carpet Co., Inc., 792 S.W.2d 759, 763 (Tex.
App.—Houston [14th Dist.] 1990, writ denied).  Rente asserts
conversion of both its equipment and profits allegedly earned on the use of its
equipment.  After reviewing the evidence
under the applicable standard of review and considering the arguments of the
parties, we conclude that Rente may not assert a conversion
claim as to profits or other payments allegedly owed to Rente;
however, we also hold that the trial court erred in not submitting a jury
question on Rente’s conversion claim regarding the
equipment. 

               Profits and Other Amounts
Allegedly Owed Under the Lease Agreement

            Rente
asserts that Truckers converted Rente’s profits from
the use of its equipment by not paying Rente the
amounts Truckers owed under the Lease Agreement.  Even if this claim were otherwise viable, we
hold as a matter of law that these sums of money are not identifiable, specific
chattels capable of being converted; rather, they are alleged indebtedness that
may be discharged by the payment of money generally.  See Newsome v. Charter Bank Colonial, 940 S.W.2d 157, 161–64 (Tex.
App.—Houston [14th Dist.] 1996, writ denied).  Therefore, Rente’s
claim for conversion as to amounts of money allegedly owed by Truckers fails as
a matter of law.  See id. 
Accordingly, we overrule the second issue as to any claim for conversion
of profits or other payments.[3]  

                                                                     Equipment

            Truckers
claims that Rente did not offer any evidence showing
it had title or a right to possess the equipment Truckers allegedly
converted.  We disagree.  The Independent Contractor Equipment Lease
Agreement, signed by Truckers and Rente, recites that
Rente owns or controls certain equipment leased to
Truckers, and identifies this equipment in an attached Exhibit A, which
contains detailed descriptions of the tractors, trailers and other equipment,
including serial numbers.  Also in
evidence are sales contracts reflecting the purchase by Rente
of some of the equipment before the execution of the Lease Agreement as well as
26 documents entitled “Equipment Lease Agreement with Purchase Option”
(hereinafter, “Driver’s Contracts”). 
Most of these Driver’s Contracts contain purported signatures of both Rente, as lessor, and of each
respective driver, as lessee.  Two of
these documents — those signed by Wilson Bonner and Jose Vasquez — contain no
signature of Rente at all.  Two others — those signed by Peter Williams
and John Goebel — have no signature of Rente in the
signature block but contain an alleged signature of Rente
on the attached Exhibit A.  These
documents all state that Rente owns the equipment
described therein.  Although Truckers
relies on the Driver’s Contracts to argue that it did not engage in the
unauthorized exercise of dominion and control over property inconsistent with
or to the exclusion of Rente’s rights, these
documents are nonetheless additional evidence of Rente’s
title and rights to possession and control of the equipment.  Based on the evidence in the record and the
applicable standard of review, we hold that there was probative evidence at
trial that raised a fact issue regarding Rente’s
title to or right to possess the equipment allegedly converted by Truckers.  See Szczepanik, 883 S.W.2d at 649; Schwartz v. Pinnacle Communications, 944 S.W.2d 427, 433 (Tex.
App.—Houston [14th Dist.] 1997, no pet.) (holding that
canceled check and invoice were sufficient to prove ownership of equipment that
was allegedly converted).

            Truckers also argues that Rente judicially admitted in a sentence in its counterclaim
that Rente’s lenders had repossessed all of the
equipment owned by Rente and referred to in the Lease
Agreement.  We find no merit in Truckers’s argument. 
The sentence in question states that “with the exception of certain
trucks and trailers that [Rente] outright owned, the
remaining trucks and trailers, which [Rente] was able
to locate, have been repossessed by various lenders.”  This sentence is not a deliberate, clear, and
unequivocal statement that Rente’s lenders have
repossessed all of the equipment subject to the Lease Agreement and so is not a
judicial admission.  See Price Pfister,
Inc. v. Moore & Kimmey, Inc., 48 S.W.3d 341,
349 (Tex. App.—Houston [14th Dist.] 2001, pet. denied).  Accordingly, this statement  has no conclusive effect.

            Having found a fact issue regarding Rente’s title to or right to possess the equipment in
question, we must decide whether there was any evidence that Truckers exercised
dominion and control over this equipment without Rente’s
consent and in a manner inconsistent with or to the exclusion of Rente’s superior rights. 
See Vickery, 792 S.W.2d at 763.  In
this regard, there is no dispute that Rente
terminated the Lease Agreement effective April 30, 1998, and demanded return of all of its
equipment.  Kiszkiel
testified that Truckers did not comply with this demand.  Truckers argues that it had no contractual
duty to return the equipment and that any drivers under contract with Truckers
who used Rente’s equipment after April 30, 1998, were
entitled to do so, because Rente had leased the
equipment to these drivers under the Driver’s Contracts.  

            Even if Truckers had no contractual
duty to return the equipment, Truckers still had no right to exercise dominion
and control over this equipment without Rente’s
consent and in a manner inconsistent with or to the exclusion of Rente’s superior rights. 
See Vickery, 792 S.W.2d at 763.  Further,
Robert Froehlich, President of Truckers, testified that Truckers probably did
use Rente’s equipment after April 30, 1998, but he
claimed that this was acceptable because of the Driver’s Contracts.  Froehlich testified that Truckers’s
invoices indicated which drivers were driving Rente’s
trucks — the ones who had a driver number that started with “770.”  The evidence introduced at trial included
numerous Truckers’s invoices billing customers for
the transportation of goods after April 30, 1998, where the driver had a number
that started with “770.”  Truckers asserts that Rente
authorized these actions by executing the Driver’s Contracts.  Rente, on the other
hand, contends that it executed only one of the 26 Driver’s Contracts
introduced in evidence at trial.  This
factual dispute over the validity of certain signatures notwithstanding, the
evidence showed that Truckers sent out at least seven invoices billing for
services performed after April 30, 1998, by three drivers[4] whose
number starts with “770” and whose Driver’s Contract was not signed by Rente.  Furthermore,
we find no evidence in the record that Rente entered
into Driver’s Contracts with these three drivers.[5]  We hold there was probative evidence raising
a fact issue as to whether Truckers exercised dominion and control over Rente’s equipment without Rente’s
consent and in a manner inconsistent with or to the exclusion of Rente’s superior rights.[6]  See
Vickery, 792 S.W.2d at 763. 

            Because there was a fact issue
regarding Rente’s conversion claim as to the
equipment, we sustain the second issue to this extent, reverse that part of the
trial court’s judgment, and remand for a jury determination of Rente’s conversion claim regarding the equipment.

C.  Did the
trial court err in refusing to submit the fraud claim to the jury?

            In the third issue, Rente and Kiszkiel argue the
trial court erred in refusing the proposed jury question on their fraud
claim.  They assert there was probative
evidence that raised a fact issue as to whether Truckers committed fraud when Truckers’s president (Froehlich) allegedly made material
misrepresentations to Kiszkiel that the
lease-purchase program would be limited, convinced Kiszkiel
to sign one of the Driver’s Contracts, and then attached a copy of this one signature
page to other such documents without the knowledge or consent of Rente or Kiszkiel.

            First, the counterclaim filed by Rente and Kiszkiel contains no
allegations in support of this theory of fraud, although it does allege fraud
and misrepresentation in other particulars not relevant to this appeal.  The counterclaim actually tends to contradict
part of the appellate argument of Rente and Kiszkiel.  Their
counterclaim states that “Rente . . . agreed to enter
into a very limited number of such agreements [Driver’s Contracts].”  This pleading suggests that Rente agreed to more than one agreement.  Further, in a letter to Truckers dated April 16, 1998, Kiszkiel states, “I am also still waiting on the contracts
and equipment inventory lists from the sale of my equipment to the
owner/operators.”

            Though Kiszkiel
testified that he agreed to one of the Driver’s Contracts, he did not specify
the driver, and he did not say that he agreed to such a contract with only one driver.  Kiszkiel did not
state whether Rente agreed to any of the 26 Driver’s
Contracts that were admitted in evidence. 
Further, applying the appropriate standard of review, we conclude there
was no evidence at trial that Truckers represented to Rente
or Kiszkiel that the lease-purchase program would be
limited or that it would include only one driver.  Therefore, because there was no evidence of
the alleged misrepresentation, the trial court did not err in refusing to
submit the fraud question.  See Green Int’l, Inc. v. Solis, 951
S.W.2d 384, 390 (Tex. 1997) (holding that fraud claim failed where there was no
evidence of a false representation); Roland
v. McCullough, 561 S.W.2d 207, 210–13 (Tex. App.—San Antonio 1973, writ ref’d n.r.e.) (holding
that fraud claim failed where there was no evidence that alleged
misrepresentation was made). 
Accordingly, we overrule the third issue.

D.        Is the evidence sufficient to support the jury’s damages
finding regarding Truckers’s claim for breach of the
Lease Agreement?

 

            In the fifth issue, Rente and Kiszkiel assert there
is no evidence to support the jury’s finding that the breach of the Lease
Agreement by Rente and Kiszkiel
resulted in $25,000 in damages to Truckers. 
Truckers’s own accounting, based on both the
contractor-settlement account and the general-ledger account, showed that there
was a net amount of $40,666.77 owed. 
This calculation includes a debit of $30,000 to reflect the amount of
the Note.  In his closing argument,
counsel for Truckers asked the jury to award only $10,666 in damages that Truckers
claimed resulted from breach of the Lease Agreement.  Truckers’s counsel
indicated that awarding more than this amount would be “double-dipping.”  Despite the evidence and statements of
counsel, the jury awarded $25,000 as damages for breach of the Lease
Agreement.  On appeal, Truckers does not
defend the sufficiency of the evidence to support this award; instead, it
requests that we suggest a remittitur rather than
reversing and remanding for a new trial. 


            Applying the applicable standard of
review, we find the evidence is legally insufficient to support the jury’s
award of $25,000; however, there is sufficient evidence to show that Truckers
suffered some damage as a result of the actions alleged to constitute breach of
the Lease Agreement.  Because Rente and Kiszkiel contested the
issue of damages, we sustain the fifth issue, reverse
the trial court’s judgment regarding Truckers’s claim
for breach of the Lease Agreement, and remand for a new trial on liability and
damages regarding this claim.  See Tex.
R. App. P. 44.1(b) (appellate court may not order separate trial solely
on unliquidated damages if liability is
contested);  Formosa Plastics Corp. USA v. Presidio Engineers and Contrs., Inc., 960 S.W.2d 41, 51 (Tex. 1998) (holding
that appellate court can remand for new trial when no evidence supports damages
awarded but there is evidence of some damages); Johnston v. McKinney Am., Inc., 9 S.W.3d 271, 284 (Tex.
App.—Houston [14th Dist.] 1999, pet. denied) (stating appellate courts cannot
remand as to damages only).  

            We decline Truckers’s
invitation to suggest a remittitur.  We conclude that a remittitur
is not appropriate, because we are remanding Truckers’s
Note claim for a retrial and because the issue of damages in Truckers’s claim for breach of the Lease Agreement relates
to Truckers’s Note claim.  In the context of this case, we hold that the
interests of justice require a remand for another trial regarding Truckers’s claims on the Note and the Lease Agreement.  See
Tex. R. App. P. 43.3 (b) (appellate
court may remand for another trial when interests of justice require it); Johnston, 9 S.W.3d at 284 (stating
appellate courts have broad discretion to remand in the interest of justice).




E.        Is the evidence sufficient to support the jury’s finding that
Truckers did not breach the Lease Agreement?

 

            In the sixth issue, Rente asserts it conclusively proved that Truckers breached
the Lease Agreement by failing to use Rente’s
equipment, failing to find enough drivers for the tractors and trailers, and
failing to pay Rente money owed under the Lease
Agreement.  We disagree.

            As to the alleged failures to use Rente’s equipment and find enough drivers, the Lease
Agreement does not contain any provision requiring either a minimum level of
equipment use or a minimum level of revenue to be generated by lease of the
equipment.  The Lease Agreement states
that “the assignment of loads to the equipment shall be solely within the
discretion of [Truckers].”  The Lease
Agreement allows either party to terminate the contract without cause with
thirty days’ notice.  In fact, Truckers
allowed Rente to terminate the contract on April 30,
1998, with no notice.  Further, Kiszkiel indicated in a letter to Truckers that Truckers
had hired a sufficient number of drivers, although he complained that these
drivers were refusing to haul certain loads for Rente’s
customers. 

            As to Truckers’s
alleged failure to properly pay Rente money allegedly
owed under the Lease Agreement, Rente cites only
portions of the testimony of one driver, David Atwood, and exhibits relating to
that driver.   Though Rente
claims that it was not paid for all of the services performed by Atwood, there
is conflicting evidence on this point both from Atwood’s testimony and from the
testimony of Truckers’s accountant (Scott), regarding
the amounts owed to Rente.  Applying the applicable standard of review,
we hold that Rente did not conclusively prove that
Truckers breached the Lease Agreement and that factually sufficient evidence
supports the jury’s finding that Truckers did not breach the Lease
Agreement.  See Coastal Chem., Inc. v. Brown, 35 S.W.3d 90, 102–03 (Tex.
App.—Houston [14th Dist.] 2000, pet. denied) (holding evidence legally and
factually sufficient to support jury’s finding regarding breach-of-contract
claim).  Accordingly, we overrule the
sixth issue.

 We conclude that
Rente’s breach-of-contract claim against Truckers may
be separated from its conversion claim and from Truckers’s
contract claims, without unfairness to the parties.  Therefore, we sever the trial court’s
judgment as to Rente’s claim against Truckers for
conversion of the equipment and as to Truckers’s
claims for breach of the Note and the Lease Agreement; we remand these claims
for a new trial and affirm the remainder of the trial court’s judgment.  See
Tex. R. App. P. 43.3(b)
(appellate court may remand for another trial when interests of justice require
it); Tex. R. App. P. 44.1(b)
(stating that, if error affects part of the matter in controversy and that part
is separable without unfairness to the parties, the appellate court should
reverse and order a new trial only as to the part affected by the error); Johnston, 9 S.W.3d at 284 (stating
appellate courts have broad discretion to remand in the interest of
justice).      

                                                             V.  Conclusion

            The trial court erred by granting a
directed verdict as to liability on Truckers’s Note
claim and by refusing to submit a jury question on Rente’s
conversion claim regarding the equipment. 
The trial court did not err either by refusing to submit a jury question
on the claim for conversion of profits or other payments allegedly owed Rente or by refusing to submit a jury question on the fraud
claim.   Nor did the trial court err by
entering judgment that Rente take nothing on its
claim for breach of the Lease Agreement. 
Therefore, we overrule part of the second issue and the third and sixth
issues.  We conclude that no evidence
supports the jury’s finding of $25,000 in damages on Truckers’s
claim under the Lease Agreement, but that the issue was contested and there was
sufficient evidence to show that Truckers suffered some damage as a result of
the actions alleged to constitute breach of the Lease Agreement.  Accordingly, we sustain part of the second
issue and the first and fifth issues, reverse the trial court’s judgment
regarding Rente’s claim for conversion of the
equipment and Truckers’s claims for breach of the
Note and the Lease Agreement, sever these claims, and remand them for a new
trial.  We affirm the remainder of the
trial court’s judgment.  

 

                                                                        /s/        Kem Thompson
Frost

                                                                                    Justice

 

Judgment rendered and Opinion filed
August 28, 2003.

Panel consists of Justices
Anderson, Fowler, and Frost.

 

 











            [1]  Although Rente and Kiszkiel seem to indicate in their appellate brief that a
prior letter agreement, dated February
 13, 1998, might have survived the execution of the Lease
Agreement, we need not and do not address that issue.





            [2]  Because of our disposition of the first
issue, we need not address the fourth issue regarding the jury’s damages
finding on the Note claim.





            [3]  Evidence regarding these or similar payments
may be relevant to the jury determination of the damages, if any, caused by Truckers’s alleged conversion of Rente’s
equipment; our ruling does not prevent the trial court on remand from admitting
evidence in this regard, providing such evidence is otherwise admissible.





            [4]  These drivers are Peter Williams, John
Goebel, and Wilson Bonner.





            [5]  Froehlich himself testified that, in order
for there to be a contract executed by the parties, he believed Rente had to sign the signature block on page 12 of the
form used for the Driver’s Contracts.





            [6]  Truckers asserts
that there was no fact issue regarding conversion, in part, because Kiszkiel’s testimony is legally insufficient based on his
alleged repeated lies under oath. 
Presuming for the sake of argument that Kiszkiel’s
testimony was untruthful, it is for the jury — not an appellate court — to
weigh the credibility of his testimony, and therefore we can consider Kiszkiel’s testimony in reviewing whether there was a fact
issue as to conversion.  See Magee v. Ulery,
993 S.W.2d 332, 336 (Tex. App.—Houston [14th Dist.]
1999, no pet.).