# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00688-CV

### C. C. Carlton Industries, Ltd. and KB Homes Lone Star, L.P., Appellants

### v.

### Kirk Blanchard, Tina Blanchard, Aleyda B. Sosa, and Maribel Rivera, Appellees

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
### NO. D-1-GN-06-001013, HONORABLE JOHN K. DIETZ, JUDGE PRESIDING

## O P I N I O N

Kirk Blanchard, Tina Blanchard, Aleyda B. Sosa, and Maribel Rivera
("Homeowners") filed suit in district court against C. C. Carlton Industries, Ltd. ("Carlton") and KB
Homes Lone Star, L.P. ("KB"), seeking to recover monetary damages they alleged they suffered as
a result of KB's and Carlton's construction activities that created a nuisance behind their residences.
A jury returned a verdict finding KB and Carlton liable for nuisance and awarding the Homeowners
collectively $200,988 in damages. KB and Carlton have appealed the court's judgment entered in
accordance with the verdict. We will affirm the trial court's judgment.

## BACKGROUND

The Homeowners are neighbors whose residences are contiguous and who live in
southeast Austin on Bixler Drive off of William Cannon Drive behind Salt Springs Road. Beginning
in August 2004, KB, a homebuilder and developer, and Carlton, a general contractor, began
constructing a new 550-home subdivision along Salt Springs Road known as "Springfield Phase B,

Section 6" ("the Project"). The Project included tearing up and widening Salt Springs Road, adding curbs and sidewalks, grading and preparing the land for home sites, removing a large number of trees, adding residential streets, installing sewer and utility lines, and constructing a storm-drainage culvert and retention pond. In connection with those activities, Carlton used heavy equipment for bulldozing, pounding, and steam-rolling the land; laying and tearing up asphalt; and digging through layers of hard clay and limestone.

In constructing the storm-drainage culvert, Carlton worked in close proximity to the Homeowners' properties and used heavy machinery to excavate through 12 to 13 feet of limestone and hard clay. Although construction of the culvert and installation of a 48-inch pipe was to have been completed in five months beginning in August 2004, Carlton took almost another three months to finish the job. The culvert was not completed until sometime in March or April 2005.

Rivera's house was closest to the construction activity, then Sosa's, then the Blanchards' house. From approximately August to November 2004, Carlton's crews worked steadily, from early morning until about six in the evening for at least five days a week, constructing the storm-drainage culvert. In September 2004, the Blanchards began noticing the front facade separating from the rest of the house and cracks appearing on the house's exterior foundation; Rivera, whose house was about 20 feet from the construction activity, observed cracks in her house and mud being sprayed on her exterior walls; and Sosa started noticing a large crack in the front entrance of her house. Because of Carlton's construction activities carried out adjacent to their houses, the Homeowners testified they experienced pounding and persistent and intense vibrations that rattled their walls and windows.

In December 2004, however, the Homeowners stated the situation became worse. Carlton's crews began working "around the clock," including weekends and holidays, to finish the

2

job because they had fallen behind schedule. They brought in three or four large bright lights and positioned them directly behind the Homeowners' residences so the crews could continue working until 1:00 in the morning. The lights, the vibrations, the pounding, and the noise were so annoying and stressful that the Homeowners lost sleep.

The Blanchards testified their house now has a crack in the foundation that runs the full length of the house; the roof has begun to leak because the joists have been "rattled off the studs"; the ceiling has separated from the walls and is cracking; the kitchen has sunk, causing the floor tiles to pop up; and all the bathroom tubs "lifted up" and separated from the pipes. Rivera stated her ceilings, wall, and foundation are now cracked; the bathroom ceiling has fallen and damaged the faucet and tiles on the wall; her ceilings have separated; and she has water damage on the ceilings from roof leaks. Sosa testified she now has cracks in the living room and kitchen and large cracks in the foundation and ceiling; the roof is leaking and the ceiling is falling; a pipe under the bathtub burst, causing water damage in the bedrooms and kitchen; and the bathroom floor has a large crack.

## DISCUSSION

**Expert Testimony of Oran Venable**

In their first issue, KB and Carlton complain the trial court abused its discretion in denying their motion to strike Oran Venable as an expert witness on the issue of causation.[1] They argue Venable was unqualified by knowledge, education, training, or experience to render scientific

---

[1] On appeal, KB and Carlton argue for the first time that Venable should not have been permitted to testify regarding the issue of standard of care. In their motion to strike, however, they only objected to Venable's testimony on causation. KB and Carlton, therefore, waived any error on standard of care. *See* Tex. R. App. P. 33.1.

opinions. Because Venable was not an engineer, KB and Carlton contend he was unqualified to give his opinion regarding any damage to the Homeowners' residences caused by the impact of construction-equipment vibrations and subsequent shockwaves.

A witness may be qualified by knowledge, skill, experience, training, or education to testify as an expert. *See* Tex. R. Evid. 702. A trial court's acceptance of a witness's qualifications as an expert is reviewed for an abuse of discretion. *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 718-19 (Tex. 1998). A court abuses its discretion when it determines the admissibility of evidence in an arbitrary or unreasonable manner or without reference to guiding principles or rules. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002); *Taylor v. Texas Dept. of Protective & Regulatory Servs.*, 160 S.W.3d 641, 649 (Tex. App.—Austin 2005, pet. denied). An appellate court must uphold a trial court's evidentiary ruling if there is any legitimate basis to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

The record shows that Venable had thirty-five years' experience related to construction, damage, and repair of residential and commercial property, much of which involved the investigation and repair of foundation failure. He was a licensed master plumber and property inspector, licensed by the Texas Real Estate Commission, who owned a real-estate inspection and remodeling business. He had performed investigations for an insurance company to determine whether vibrations resulting from construction activity caused damage to a house and its plumbing system and, because of his previous experience inspecting and investigating damage to other houses in the neighborhood, he was familiar with the geology of the area, that is, its strata of hard clay, sand, and limestone. To further understand vibration and wave analysis, he had consulted learned treatises

and other published works by engineers and people involved in construction. Venable also had personal experience operating such heavy equipment as a back-hoe, a hoe ram, a compactor, and a grader. Based on Venable's knowledge, skill, experience, and training, the trial court could have rationally determined that Venable was qualified to testify as an expert on the issue of causation.

We find that the trial court did not abuse its discretion in accepting Venable's qualifications as an expert witness and in denying KB's and Carlton's motion to strike. KB's and Carlton's first issue is overruled.

**Sufficiency of the Evidence**

KB and Carlton next assert that the jury's finding of nuisance is not supported by either legally or factually sufficient evidence. The jury was charged to find whether the conduct of Carlton or KB created a nuisance that proximately caused damage to the Blanchards' home, Rivera's home, and Sosa's home. "Nuisance" was defined as "a condition that substantially interferes with the use and enjoyment of property." "Proximate cause" was defined as follows:

> [T]hat cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom.

The jury answered "yes": both Carlton's and KB's conduct created a nuisance that proximately caused damage to the Homeowners' homes.

In reviewing the legal sufficiency of the evidence, this Court must view the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. *City of Keller v. Wilson*,

5

168 S.W.3d 802, 807 (Tex. 2005). Every reasonable inference must be indulged in the prevailing party's favor. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex. 2002). There is legally insufficient evidence or "no evidence" when the record reveals one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810; *Ancira Enters., Inc. v. Fischer*, 178 S.W.3d 82, 87 (Tex. App.—Austin 2005, no pet.).

In reviewing an assertion that the evidence is factually insufficient, this Court must consider all the evidence in the record, including any evidence contrary to the judgment. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Inferences may support a judgment as long as they are reasonable in light of all the evidence. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996) (per curiam). A jury verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex. 1985).

"A 'nuisance' is a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004); *Graham v. Pirkey*, 212 S.W.3d 507, 511 (Tex. App.—Austin 2006, no pet.). "There is no question that foul odors, dust, noise, and bright lights—if sufficiently extreme—may constitute a nuisance." *Schneider*, 147 S.W.3d at 269. Courts have broken actionable nuisance into three categories: (1) negligent invasion of another's interests; (2) intentional invasion of another's interests; or (3) other conduct, culpable

6

because abnormal and out of place in its surroundings, that invades another's interests. *City of Tyler v. Likes*, 962 S.W.2d 489, 503 (Tex. 1997).

KB and Carlton argue the Homeowners presented no evidence that Carlton's conduct was abnormal and out of place. They claim their construction project was "a typical residential development project," required and directed by the City of Austin, and that expansion and improvement of an existing road and construction of a retention pond and drainage culvert were normal occurrences. Because the City of Austin approved KB's and Carlton's engineering plans, gave KB and Carlton a permit to construct the public improvements, and inspected the project while all the improvements were being constructed, KB and Carlton assert their conduct was normal and not out of place in its surroundings.

We initially note the jury charge did not set out the categories of actionable nuisance but only broadly defined "nuisance" as set forth above. Although during the charge conference KB and Carlton neglected to argue the charge did not set out those categories, the Homeowners do not now assert that KB's and Carlton's failure to object to the jury charge waived error regarding this point.

The record, however, demonstrates sufficient evidence to support the jury's findings of nuisance and a determination that Carlton's conduct was abnormal and out of place in its surroundings. For almost eight months, Carlton's crew worked to construct the storm-drainage culvert, using heavy equipment to excavate through 12 to 13 feet of limestone and hard clay. The record shows that this construction activity occurred approximately 20 feet from Rivera's house and in close proximity to Sosa's and the Blanchards' residences, which are contiguous to Rivera's house. Vibrations from KB's and Carlton's construction project caused each Homeowners' residence to

7

experience large cracks in the foundation, leaks in the roof, and cracks in the interior and exterior walls. Vibrations also caused the following: the Blanchards' house to have broken floors and their bathroom tubs to separate from the pipes; Rivera's bathroom ceiling to fall; and Sosa's master bedroom, kitchen, and guest bathroom to have water damage from broken pipes. When it became apparent that it had fallen behind schedule and would have to pay KB $1,000 a day in liquidated damages for the delay, Carlton brought in three or four large, bright lights, positioned them directly behind the Homeowners' residences, and began working "around-the-clock" for approximately four months, including weekends and holidays, to finish the job. Annoyed and stressed from the lights, the vibrations, the pounding, and the noise, the Homeowners testified they lost sleep.

Regarding KB's and Carlton's assertion they were insulated from nuisance liability because they held a city permit, we note that,even if a commercial enterprise holds a valid permit to conduct a particular business, the manner in which it performs its activity may give rise to an action for nuisance. *See Manchester Terminal Corp. v. Texas Tx Tx Marine Transp., Inc.*, 781 S.W.2d 646, 650 (Tex. App.—Houston [1st Dist.] 1989, writ denied).

KB and Carlton also contend the Homeowners did not prove that KB's and Carlton's construction activities proximately caused property damage to their houses. KB and Carlton argue that Venable, the Homeowners' only expert, failed to establish a scientific nexus between their construction activities and the damages complained of by the Homeowners. They claim Venable neglected to explain how vibrations from a particular piece of Carlton's construction equipment traveled directly through the earth and impacted each Homeowner's foundation.

The record shows that, in the month before KB and Carlton began the construction project, the Blanchards had a home inspection performed in connection with the refinancing of their

8

mortgage. The inspector confirmed that the Blanchards' house was in excellent condition and exhibited no problems. Both Rivera and Sosa stated their houses were in perfect condition prior to KB's and Carlton's construction activities. Yet, a month after Carlton began constructing the storm-drainage culvert, all the Homeowners noticed cracks in their foundations and then, later, cracks in their ceilings and interior and exterior walls, as well as other damage.

Venable determined that the vibrations and shockwaves from KB's and Carlton's construction activity caused each of the Homeowners' residences to suffer foundation movement that, in turn, caused the foundations and exterior and interior walls of the houses to crack and their plumbing systems to leak. In reaching this opinion, he conducted an investigation in which he initially spent approximately 12 hours interviewing the Homeowners, inspecting the damage to their residences, taking numerous photographs, and conducting plumbing-leak-detection tests. He later conducted follow-up inspections of all three houses. Venable reviewed approximately 8,000 pages of documents supplied by Carlton regarding the equipment it used in its construction activities, and he had discussions with engineers and operators of that type of equipment to determine whether the use of such equipment could cause vibrations sufficiently intense to damage the Homeowners' houses. He measured the distances from the Homeowners' residences to Carlton's construction site so that he could understand the proximity in which the vibrations and pounding from the "breaking rock" were occurring. In addition, Venable ruled out other potential causes of the property damage suffered by the Homeowners, such as improper maintenance, blasting, fault movement, normal settling, tree roots, drainage problems, and moisture or plumbing leaks.

KB and Carlton contend their expert, Kirby Meyer, a civil engineer specializing in geotechnical engineering, testified that the damages to the Homeowners' residences were not

reflective of the types associated with vibration effects. Meyer noted that the clay soils supporting the Homeowners' residences are "highly reactive," that is, those soils have the ability to expand or shrink with the change of water content caused by bad drainage, plumbing leaks, or trees pulling moisture out of the soil. In his opinion, the Homeowners' houses were not damaged by vibrations because, in his inspection of their houses and examination of Venable's photographs of the cracks in the Homeowners' residences, he saw no evidence of the "X-shaped" cracking patterns associated with the effects of vibration. The record shows, however, that Meyer spent less than five minutes inside the Blanchards' house, only three minutes inside Sosa's house, and never went inside Rivera's house.

When testimony is conflicting, it is for the jury to determine which witness is more credible. *Dillard Dep't Stores, Inc. v. Silva*, 148 S.W.3d 370, 372 (Tex. 2004); *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex. 1982). Venable was qualified as an expert witness on the issue of causation, and the jury obviously found him more credible than Meyer.

Viewing the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not, we hold the evidence legally sufficient to support the jury's finding that both Carlton's and KB's conduct created a nuisance that proximately caused damage to the Homeowners' homes. Considering all the evidence and inferences in the record, including any evidence contrary to the judgment, we hold the evidence factually sufficient and the jury verdict not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. KB's and Carlton's second issue is overruled.

**Proper Measure of Damages**

In their third issue, KB and Carlton assert the trial court erred in overruling their objection to the submission of jury questions numbers 16 through 18 as an improper measure of damages. In Question No. 16, the jury awarded the Blanchards the following damages: (a) $55,524 for cost of repairs and contents manipulation and storage; (b) $9,000 for reasonable additional living expenses incurred during repairs; (c) $1,250 for reasonable inspection fees; and (d) $4,500 for loss of use and enjoyment due to lights and noise. The jury in Question No. 17 awarded Sosa the following damages: (a) $51,427 for cost of repairs and contents manipulation and storage; (b) $9,000 for reasonable additional living expenses incurred during repairs; (c) $1,250 for reasonable inspection fees; and (d) $4,500 for loss of use and enjoyment due to lights and noise. In Question No. 18, the jury awarded Rivera the following damages: (a) $49,787 for cost of repairs and contents manipulation and storage; (b) $9,000 for reasonable additional living expenses incurred during repairs; (c) $1,250 for reasonable inspection fees; and (d) $4,500 for loss of use and enjoyment due to lights and noise.

Whether the trial court erred in applying an improper measure of damages is a question of law subject to de novo review. *TA Operating Corp. v. Solar Applications Eng'g, Inc.*, 191 S.W.3d 173, 183 (Tex. App.—San Antonio 2005, pet. granted); *Matheus v. Sasser*, 164 S.W.3d 453, 458 (Tex. App.—Fort Worth 2005, no pet.). A jury instruction is proper if it assists the jury, accurately states the law, and finds support in the pleadings and evidence. *Union Pac. R. R. Co. v. Williams*, 85 S.W.3d 162, 166 (Tex. 2002). KB and Carlton question whether, as a matter of law, cost of repairs is an appropriate measure of damages in this case.

KB and Carlton argue that the verdict awarding cost of repairs and contents manipulation and storage, additional living expenses, and inspection fees is an improper measure of

nuisance damages, and that the trial court erred in overruling their objection to the jury charge.[2] They claim "[the Homeowners] asserted that their homes had been permanently damaged by [KB's and Carlton's] negligent actions." Citing *Schneider National Carriers, Inc. v. Bates*, KB and Carlton contend the proper measure of damages in a permanent nuisance case is not cost of repairs but diminution of fair market value. *See* 147 S.W.3d at 276. However, they note that the Homeowners chose not to present evidence of their homes' fair market value prior to and after the injury.

Contrary to KB's and Carlton's claim that the Homeowners asserted their homes had been permanently damaged by KB's and Carlton's construction activities, the Homeowners argue they never requested such a finding, nor was any such determination ever made. In their petition, the Homeowners pled they incurred damages that included, among others, "repair costs needed for each [Homeowner's] house and property" and "diminution of value to the houses and property." They contend that, although the trial court did not expressly label the nuisance as temporary or permanent, its agreeing with the Homeowners that the cost of repairs was a proper measure of damages to submit to the jury could be construed as the court's determination that the nuisance case was temporary.

A nuisance is permanent if it is "constant and continuous" and if "injury constantly and regularly recurs." *Schneider*, 147 S.W.3d at 272. "Conversely, a nuisance is temporary if it is of limited duration." *Id.* The nuisance in this case was of the limited duration of eight months. Because the nuisance was of limited duration, we find this is a temporary nuisance case.

The terms "permanent" and "temporary" have also been key in determining the appropriate measure of damages in property-damage cases, that is, whether the appropriate measure

---

[2] KB and Carlton are not appealing the jury's award of damages for loss of use and enjoyment due to lights and noise.

of property damage is repair cost and lost rent (temporary) or lost market value (permanent). *See id*. at 270, n. 12. The proper measure of damages for a temporary injury to real property is the amount necessary to place property owners in the same position they occupied prior to the injury. *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex. 1978), *disapproved on other grounds*, *Schneider*, 147 S.W.3d at 281, n. 78.

The Homeowners argue that KB and Carlton waived error regarding the following categories of damages: (a) reasonable and additional living expenses incurred during repairs and (b) reasonable inspection fees. KB and Carlton respond they did preserve error by submitting to the trial court the proper measure of damages "in a permanent nuisance case" in their proposed charge. The record demonstrates that, during the charge conference, KB and Carlton objected only to the inclusion of cost of repairs as the measure of damages. By failing to object to the other elements of damages included in the proposed charge, KB and Carlton waived their complaint.

We find that submission of the jury charge was proper. Inclusion of cost of repairs was a proper submission given the "temporary" nature of the nuisance. Regarding the trial court's submission of "reasonable and additional living expenses incurred during repairs" and "reasonable inspection fees," a party objecting to a charge must clearly point out the objectionable matter and the grounds of the objection. *See* Tex. R. Civ. P. 274. "An objection that does not meet both requirements is properly overruled and does not preserve error on appeal." *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex. 1986); *see Equistar Chems., L.P. v. Dresser-Rand Co.*, 240 S.W.3d 864, 868 (Tex. 2007) (to preserve error on appeal, party must timely object and make trial court aware of its complaint). KB and Carlton neglected to point out clearly to the trial court the objectionable elements of damages in the jury charge and the grounds of their objection. Finding that the trial court

13

did not err in submitting jury questions numbers 16 through 18, we overrule KB's and Carlton's third issue.

## CONCLUSION

Having overruled KB's and Carlton's three issues on appeal, we affirm the judgment of the trial court.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   April 9, 2010