

NUMBER 13-13-00331-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

RAUL FLORES, INC.,                                                    Appellant,

v.

ADRIAN D. RODRIGUEZ AND
L&F DISTRIBUTORS, L.L.C.,                                        Appellees.

**On appeal from the County Court at Law No. 7
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Garza, Benavides, and Perkes
Memorandum Opinion by Justice Garza**

In this commercial property damage case, appellant Raul Flores, Inc. ("Flores"), sued appellees Adrian D. Rodriguez and L&F Distributors, L.L.C. ("L&F"). After trial, the trial court directed a verdict in favor of appellees on certain claims, and the jury found in favor of Flores on the remaining claims. Flores raises five issues on appeal, contending

that the trial court erred by granting appellees' motions for directed verdict and by excluding certain evidence. We affirm.

## I. BACKGROUND

Flores owns a car wash facility in Port Isabel, Texas. L&F is a beverage distributor and Rodriguez was one of its employees. Flores's original petition alleged that, on September 24, 2009, Rodriguez drove one of L&F's 18-wheeler delivery trucks onto the car wash property and damaged the canopy that covers the facility. According to the petition, as a result of the accident, the car wash sustained $12,500 in physical damages and was temporarily shut down by fire marshals, resulting in lost profits. Flores's petition also stated in a separate allegation that L&F's delivery trucks repeatedly drove onto car wash property on other occasions while delivering beer to a convenience store adjacent to the car wash, thereby causing $71,100 in damages to the car wash's concrete pavement. The petition alleged that L&F was vicariously liable for Rodriguez's actions and listed causes of action for damage to property, intentional trespass, negligence, gross negligence, res ipsa loquitur, negligence per se, and private nuisance.

Flores designated Raciel Juarez and Simon Solorio to provide expert testimony as to the cause of the damage to the concrete pavement.[1] Appellees filed a motion to strike the testimony of the purported experts, however, and the trial court granted the motion after a hearing.

Subsequently, a trial was held. At the close of Flores's case-in-chief, the trial court granted appellees' motions for directed verdict on Flores's exemplary damages, res ipsa

---

[1] The clerk's record does not contain any document filed by Flores purporting to designate expert witnesses. However, the parties agree that Flores designated these experts on or about February 22, 2012.

loquitur, and negligence per se claims. The trial court also granted directed verdict in favor of appellees on Flores's negligence, gross negligence, nuisance, damage to property,[2] and vicarious liability claims, but only to the extent those claims were based on damage to the concrete pavement.

The remaining claims—each of which related exclusively to the allegation that appellees caused damage to the car wash's canopy—were submitted to the jury. The jury found that Rodriguez's actions proximately caused "the occurrence in question" and that Rodriguez was acting in the course and scope of his employment with L&F at the time thereof. It awarded Flores $12,404 in damages for "structure/canopy repair" and $800 for lost profits, and the trial court rendered judgment on the verdict. This appeal followed.

## II. DISCUSSION

### A. Directed Verdict

Flores argues by his first issue that the trial court erred in granting appellees' motions for directed verdict as to causation on the concrete damages claim. By his fourth and fifth issues, he argues that the trial court erred in granting appellees' motions for directed verdict on exemplary damages and vicarious liability, respectively.

#### 1. Standard of Review

In reviewing the grant or denial of a directed verdict, we employ the standard for assessing the legal sufficiency of the evidence. *City of Keller v. Wilson*, 168 S.W.3d 802,

---

[2] The record does not contain written motions for directed verdict on Flores's res ipsa loquitur or property damage claims. However, a trial court may grant directed verdict on its own volition. *See In re Price's Estate*, 375 S.W.2d 900, 904 (Tex. 1964) ("If there are no fact issues raised by the evidence to be submitted to the jury the court can, of its own volition, instruct a verdict for one of the parties."); *Castillo v. Euresti*, 579 S.W.2d 581, 582 (Tex. Civ. App.—Corpus Christi 1979, no writ) (same). Accordingly, the record's absence of motions for directed verdict on these claims does not invalidate the orders directing verdict thereon in favor of appellees.

3

809–28 (Tex. 2005). Under this standard, we determine whether there is any evidence of probative force to raise a fact issue on the question presented. *Bostrom Seating, Inc. v. Crane Carrier Co.*, 140 S.W.3d 681, 684 (Tex. 2004); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 21 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We consider the evidence in the light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam). However, if the evidence allows only one inference, neither jurors nor the reviewing court may disregard it. *City of Keller*, 168 S.W.3d at 822. "A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment." *B & W Supply, Inc.*, 305 S.W.3d at 21. If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for jury determination of that issue. *Szczepanik*, 883 S.W.2d at 649.

In our analysis, we do not consider the evidence that Flores contends, by his other issues, was erroneously excluded. *See, e.g., Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995); *cf. City of Keller*, 168 S.W.3d at 817 n.74 (citing *Moff v. State*, 131 S.W.3d 485 (Tex. Crim. App. 2004) ("[A]n appellant is not entitled to have an appellate court first consider the appellant's complaints concerning improper[ly] admitted evidence and, if it resolves any of those in favor of the appellant, to then, second, consider the sufficiency of the properly-admitted evidence to support the conviction.")).

### 2. Causation

Appellees' directed verdict motions challenged the sufficiency of the evidence

4

supporting causation with respect to each of Flores's causes of action.[3] Proximate cause comprises two elements: cause-in-fact and foreseeability. *Lee Lewis Const., Inc. v. Harrison*, 70 S.W.3d 778, 784 (Tex. 2001). Cause-in-fact means the act or omission was a substantial factor in bringing about the injury and, without it, the harm would not have occurred. *Id.*

Appellees note that the trial court excluded all of Flores's proffered expert testimony and they argue that expert testimony was necessary to establish causation with respect to the concrete damage. In general, expert testimony is necessary to establish causation when the allegations are of such a nature as not to be within the experience of the layman. *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004). On the other hand, "non-expert evidence alone is sufficient to support a finding of causation in limited circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence." *Guevara v. Ferrer*, 247 S.W.3d 662, 668 (Tex. 2007). Whether expert testimony is required is a question of law that we review de novo. *FFE Transp. Servs., Inc.*, 154 S.W.3d at 90.

We do not believe that expert testimony was necessary to establish causation in this case. Lay testimony establishing, for example, that the pavement developed cracks and pot holes shortly after appellees' delivery trucks drove over the pavement could potentially be probative as to whether the damage was, in fact, caused by those delivery

---

[3] Causation is an essential element of each of the causes of action alleged by Flores and disposed of by directed verdict. *See Hawkins v. Walvoord*, 25 S.W.3d 882, 892 (Tex. App.—El Paso 2000, pet. denied) ("Cause in fact is an essential element of every negligent or intentional tort recognized in Texas.").

trucks. *See Guevara*, 247 S.W.3d at 668 (stating that "[e]vidence of an event followed closely by manifestation of or treatment for conditions which did not appear before the event raises suspicion that the event at issue caused the conditions" and that, while "suspicion has not been and is not legally sufficient to support a finding of legal causation," "evidence that conditions exhibited themselves or were diagnosed shortly after an event," "when combined with other causation evidence," may nevertheless be probative in determining causation). Such evidence of temporal proximity, in combination with other lay testimony tending to exclude other potential causes, could theoretically establish that L&F's trucks caused the damage to the car wash concrete. *See id.* Unlike in the medical negligence context, the causal relationship between the occurrence (i.e., 18-wheeler delivery trucks driving over the pavement) and the condition (i.e., damage to the pavement) could in principle be determined by a layman in this case. *See id.*; *Pilgrim's Pride Corp. v. Smoak*, 134 S.W.3d 880, 894 (Tex. App.—Texarkana 2004, pet. denied) (holding that lay testimony was sufficient to establish causation in traffic accident case because the case "does not involve complex accident reconstruction analysis in order to understand whose negligence caused the accident, and the jury had ample evidence from which to determine fault"); *cf. Jelinek v. Casas*, 328 S.W.3d 526, 534 (Tex. 2010) (holding, in a medical negligence case involving erroneously withheld medication, that "expert testimony was crucial to link the prescription lapse to an infection causing additional pain and suffering beyond what [the decedent] would otherwise have experienced").[4]

---

[4] Appellees do not dispute that lay testimony was sufficient to establish causation with respect to the canopy damage. In particular, Raul Flores's son, Frank Flores, testified that there were "cracks" in the columns supporting the canopy and that those "cracks" were not there before the accident in which L&F's truck struck the canopy.

6

However, while lay testimony could *theoretically* have established causation in this case, we find that the actual testimony adduced at trial did not do so.[5] The following is a summary of the relevant testimony. David Johnson, a private investigator, testified that he conducted surveillance of the car wash for a 12-day period at the request of appellees' counsel and that, during that period, no 18-wheeler trucks crossed the pavement. However, Johnson observed other trucks with fewer than 18 wheels traverse the property, including "a trash truck owned by Republic Waste," "a truck owned by Glazer Distributing," a truck owned by AAA Cooper Transportation, "a Borden Milk truck," "a Bimbo Food truck," a tortilla delivery truck, a "Deli Express" truck, "an AEP Energy truck," and a "lawn care truck . . . carrying a trailer full of lawn care equipment." Johnson testified further that a "school bus owned by the Corpus Christi Independent School District" traversed the property. Heriberto Diaz, an employee at the car wash, testified that the only 18-wheeler trucks that crossed the pavement were beer trucks operated by L&F, but he conceded that a Borden Milk truck and a garbage truck also traversed the property. Frank Flores, Raul Flores's son, also testified that the "Budweiser 18-wheelers" were the only trucks "of that size" that he saw traversing the property. Several witnesses attested to the fact that L&F's trucks traversed the property three or four times per week.

Flores testified through an interpreter that he hired a contractor to construct the car wash's concrete pavement in 1999. Flores stated: "We used regular cement, regular concrete that is only for cars and small pickup trucks or light vehicles." He testified that,

---

[5] In their brief, appellees argue in part that Flores proffered "unsubstantiated evidence that is easily controverted" and presented "[n]o proof, just inconsistent testimony." However, under the applicable standard of review, probative evidence that is "controverted" by or "inconsistent" with other evidence would still be legally sufficient to survive a motion for directed verdict. *See Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994) (per curiam).

7

after the car wash opened in 2000, "I was not expecting those Budweiser trucks would enter through there." He clarified that he was referring to "the 18-wheelers." He instructed his employee not to let the 18-wheelers onto the pavement "because they were too heavy and they were going to break the concrete." Flores testified that 18-wheelers would go through his car wash "[t]hree or four times" per week but that "I wouldn't know for sure because the ones that would tell me about [it] were the workers that were telling me that they were passing through often." Flores also stated that a "trash truck" occasionally drove onto the pavement as well.

Flores notes correctly that there may be more than one proximate cause of an event, *see Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010), and that, in order to prove causation, a plaintiff is not required to exclude every other reasonable hypothesis. *See Brandt v. Surber*, 194 S.W.3d 108, 124 (Tex. App.—Corpus Christi 2006, pet. denied). However, a plaintiff *is* required to produce evidence establishing that the defendant's conduct more likely than not caused the plaintiff's injury. *See Kramer v. Lewisville Mem'l Hosp.*, 858 S.W.2d 397, 400 (Tex. 1993) (holding, in the medical negligence context, that recovery is barred "where the defendant's negligence deprived the tort victim of only a 50% or less chance of avoiding the ultimate harm"). In *Kramer*, the Texas Supreme Court observed:

> [I]n searching for truth, the law does not, and should not, require proof of an absolute certainty of causation or any other factual issue. It always settles for some lower threshold of certainty, whether beyond a reasonable doubt in criminal law, clear and convincing evidence in certain civil matters involving constitutional rights, or the more typical civil burden of reasonable probability. Below reasonable probability, however, we do not believe that a sufficient number of alternative explanations and hypotheses for the cause of the harm are eliminated to permit a judicial determination of responsibility. . . .

8

Imperfect as it may be, our legal system attempts to ascertain facts to arrive at the truth. To protect the integrity of that goal, there must be some degree of certainty regarding causation before a jury may determine as fact that a defendant did cause the plaintiff's injury and should therefore compensate the plaintiff in damages. To dispense with this requirement is to abandon the truth-seeking function of the law.

The more likely than not standard is thus not some arbitrary, irrational benchmark for cutting off malpractice recoveries, but rather a fundamental prerequisite of an ordered system of justice.

*Id.* (internal citations and quotations omitted).

Here, the specific lay testimony adduced at trial was insufficient to establish causation because it did not tend to show that L&F's 18-wheeler delivery trucks, more likely than not, caused the damage to the car wash's pavement. Although there was evidence that L&F's trucks traversed the property and that the pavement was intended only for cars and light trucks, the witnesses were unanimous in stating that there were other trucks that traversed the property as well, and there was no evidence that tended to exclude these other trucks as potential causes of the damage complained of by Flores.[6]

Flores directs us to *C.C. Carlton Industries, Ltd. v. Blanchard*, 311 S.W.3d 654,

---

[6] At trial, the following exchange took place between Flores's counsel and Juarez:

Q.    And is the type of—is it going to be—the same type of cement that you're going to put in there is going to be for what type of use, sir?

A.    It will be for the type of use of a car wash and for normal standard traffic and lightweight traffic.

Q.    Okay. . . . Would that also—does that also include—when you say light truck use, would that also include the use of garbage—a 10-wheel garbage truck?

A.    It was taken into consideration to use lightweight trucks like 10-wheelers and it was taken into consideration regular standard automotive.

On appeal, Flores asserts that this testimony constitutes evidence that the car wash's pavement could not have been damaged by trucks with fewer than 18 wheels. We disagree. Juarez testified that he had prepared an estimate of the cost to repair the pavement, and these remarks were made in that context. It is apparent, then, that Juarez was speaking about the concrete that he assumed would be used to repair the pavement—he was not speaking about the actual pavement installed at the car wash which had been damaged.

9

661 (Tex. App.—Austin 2010, no pet.), another property damage case in which the sufficiency of causation evidence was at issue. In *Carlton*, the plaintiffs' expert testified that "vibrations and shockwaves" from the defendant's construction activity caused damage to the plaintiffs' nearby houses. *Id.* On appeal, the defendant argued that the plaintiffs' expert did not establish a "scientific nexus" between the construction activities and the damage because he "neglected to explain *how* vibrations from a particular piece of [defendant's] construction equipment traveled directly through the earth and impacted each [plaintiff's] foundation." *Id.* at 660 (emphasis added). The trial court, however, determined that the expert testimony was sufficient to support causation. *Id.* at 661. Flores argues that this case illustrates that jurors may infer causation from indirect testimony. However, *Carlton* is distinguishable. First, the specific evidence relied upon by the plaintiffs in that case was the testimony of a qualified expert; therefore, the requirements of Texas Rule of Evidence 701 regarding lay opinion testimony did not apply. *See* TEX. R. EVID. 701 ("If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."). Second, and more importantly, the plaintiffs' expert in *Carlton* "ruled out other potential causes of the property damage suffered by the [plaintiffs], such as improper maintenance, blasting, fault movement, normal settling, tree roots, drainage problems, and moisture or plumbing leaks." 311 S.W.3d at 661. No witness provided similar testimony—i.e., excluding alternate sources of damage—on behalf of Flores in this case.

"When the evidence offered to prove a vital fact is so weak as to do no more than

10

create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). The evidence adduced here supported no more than a "mere surmise or suspicion" that L&F's 18-wheeler delivery trucks caused the pavement damage. *See id.* Therefore, the trial court did not err in granting directed verdict in favor of appellees on that claim. Flores's first issue is overruled.

## 2. Exemplary Damages

By his fourth issue, Flores argues that the trial court erred by granting appellees' motion for directed verdict as to exemplary damages. In general, "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (West, Westlaw through 2013 3d C.S.).

Flores pleaded gross negligence and malice; therefore, we will examine the record for "any evidence of probative force to raise a fact issue," *Bostrom Seating, Inc.*, 140 S.W.3d at 684, as to whether appellees acted with malice or gross negligence with respect to the September 24, 2009 incident in which the car wash canopy was damaged.[7] "Malice" means "a specific intent by the defendant to cause substantial injury or harm to the claimant." TEX. CIV. PRAC. & REM. CODE ANN. § 41.001(7) (West, Westlaw through 2013 3d C.S.). "Gross negligence" means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the

---

[7] Flores's petition requested exemplary damages with respect to both the canopy damage claim and the pavement damage claim, and the order directing verdict applied to both claims. However, we have already held that directed verdict was proper on the pavement damage claim because there was legally insufficient evidence of causation. Therefore, we address Flores's fourth issue only insofar as it pertains to the canopy damage claim. *See* TEX. R. APP. P. 47.1.

11

time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

*Id.* § 41.001(11).

Flores's exemplary damages claim was based entirely on his allegation that L&F had been repeatedly warned not to drive on the car wash premises. Raul Flores, Diaz, and Frank Flores each testified that they told the drivers of trucks that came on the property not to do so again. Raul Flores further testified that he repeatedly called L&F to complain about the drivers' actions. This evidence establishes generally that L&F and its drivers were aware that Flores did not want them to drive on his property. However, it does not establish specifically that Rodriguez, when his delivery truck struck the car wash canopy on September 24, 2009, either (1) specifically intended to cause substantial injury or harm to the car wash or (2) had actual, subjective awareness that, by driving his truck onto the property, he risked causing damage to the canopy. *See id.* § 41.001(7), (11). Considering this evidence in the light most favorable to Flores, *see Szczepanik*, 883 S.W.2d at 649, we conclude that it is not probative as to the issues of malice or gross negligence with respect to the canopy damage claim. Accordingly, directed verdict on exemplary damages was proper. We overrule Flores's fourth issue.

### 3. Vicarious Liability

By his fifth issue, Flores contends that the trial court erred in granting directed verdict as to his vicarious liability claim. However, the order directing verdict on this claim specifically limited the ruling to Flores's pavement damage claim, and we have already concluded that directed verdict was proper on that claim because the evidence was

12

legally insufficient to support causation.  Accordingly, Flores's fifth issue is overruled as moot.

## B.      Exclusion of Expert Causation Testimony

We next address Flores's third issue on appeal, in which he argues that the trial court erred by granting appellees' motion to exclude the expert testimony of Juarez and Solorio.

### 1.      Applicable Law and Standard of Review

Texas Rule of Evidence 702 provides that, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  TEX. R. EVID. 702.  Pursuant to this rule, a proponent of expert testimony must not only show that the expert is qualified, but must also show that the testimony is "relevant to the issues in the case and is based upon a reliable foundation."  *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex. 1995).  The trial court is responsible for making the preliminary determination of whether the proffered testimony meets those standards.  *Id.*

Scientific evidence which is not grounded "in the methods and procedures of science" is no more than "subjective belief or unsupported speculation."  *Id.* at 557 (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–93 (1993)).  Expert testimony is also unreliable if "there is simply too great an analytical gap between the data and the opinion proffered."  *Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 39 (Tex. 2007).  Unreliable evidence is of no assistance to the trier of fact and is therefore inadmissible under Rule 702.  *Robinson*, 923 S.W.2d at 557.

13

There are many factors that a trial court may consider in making the threshold determination of admissibility under Rule 702. These factors include, but are not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert . . . ; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique.

*Id.*

Moreover, "when the facts support several possible conclusions, only some of which establish that the defendant's negligence caused the plaintiff's injury, the expert must explain to the fact finder why those conclusions are superior based on verifiable . . . evidence, not simply the expert's opinion." *Jelinek*, 328 S.W.3d at 536. "If no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Id.* "A claim will not stand or fall on the mere ipse dixit of a credentialed witness." *Id.* (citing *City of San Antonio v. Pollock*, 284 S.W.3d 809, 818 (Tex. 2009)); *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009) ("Conclusory or speculative opinion testimony is not relevant evidence because it does not tend to make the existence of material facts more probable or less probable.").

A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005).

### 2. Juarez

Appellees' motion to strike was accompanied by transcripts of depositions given by both proposed experts. In his deposition, Juarez stated that he is a general contractor and business owner and that he has a bachelor's degree in mechanical engineering.

14

Juarez stated that, at Flores's request, he performed analyses and gave cost estimates with respect to the damage on both the pavement and the canopy at Flores's car wash.

With respect to the pavement, Juarez measured the thickness of the foundation and determined that "it was not a foundation that was designed for heavy load traffic like trailers." However, when appellees' counsel asked Juarez whether he could "determine what weight the concrete was designed for based on a visual inspection only," Juarez replied: "No. It needed to—we needed to execute more testing to get exact data. But I was just hired to do an estimate on repair." Juarez then opined:

> I strongly believe that [the pavement damage] was due to the traffic of these trailers, because that was the route that the trailers took inside of the property of Mr. Flores to deliver the supplies to the store. That was the area that I analyzed and I noticed—and I noticed the route.

Juarez noted, however, that his opinion was based on information given to him by Flores that L&F's trucks had driven over the pavement. He denied being told by Flores about garbage trucks, other trucks, and school buses traversing the same part of the pavement. Juarez stated that he was not asked to determine which company's vehicles, in particular, caused the damage to the concrete.

We find that the trial court did not abuse its discretion in excluding the testimony of Juarez related to cause of the concrete damage.[8] Juarez based his central conclusion—i.e., that the damage to the concrete was done by tractor-trailers—only on a visual inspection and a report by Solorio. Juarez conceded that he did not obtain original designs or schematics of the concrete pavement, nor did he take any core samples. He

---

[8] Juarez's testimony regarding the estimate of repair costs was admissible, and he was permitted to testify at trial in that regard. In accordance with the trial court's order granting appellees' motion to strike, however, Juarez was not permitted to testify at trial as to causation.

did not have any information, other what was relayed to him by Flores, about the nature or volume of other vehicular traffic that traversed the pavement. He did not investigate other possible causes of the damage. *See Jelinek*, 328 S.W.3d at 536. He stated that he was not hired to determine which company caused the damage to the pavement, but rather, he was hired merely to give an estimate as to repair costs.[9] Under these circumstances, there was "simply too great an analytical gap," *Ledesma*, 242 S.W.3d at 39, between the data made available to Juarez and his conclusion regarding causation. Accordingly, Juarez's causation testimony was unreliable and was properly excluded.

### 3. Solorio

Solorio, a licensed structural engineer, stated in his deposition that Flores asked him to inspect the canopy and pavement damage. With respect to the pavement, Solorio stated that he was asked to "try to determine if it was damaged due to vehicles or damage[d] due to truck traffic." Flores told Solorio that trucks were driving over the car wash property; Solorio conceded that he had no personal knowledge about whether L&F's trucks, in particular, drove over the property. Solorio performed a visual inspection and, according to his written report, observed "[s]everal hairline to 3/8 of an inch wide separations throughout the concrete pavement" and "[a]round the exterior perimeter of the concrete pavement several areas where the concrete pavement has failed and created potholes." Solorio's report concluded:

> In our professional opinion, the significant damage of the concrete pavement around the perimeter of the property, is more likely than not, caused by the large and small tractor trailers. The concrete pavement, is

---

[9] The written report prepared by Juarez for Flores states: "The main purpose of this assessment report is to determine the cost of the damages caused by the accident and created by heavy density traffic of heavy commercial truck[s] that constantly drove and operated over perimeter foundation of the car wash property."

16

more likely than not, designed for personal vehicles and not tractor trailers. The heavy weight of these tractor trailers has caused the supporting subgrade to exceed its allowable design load bearing capacity. As the allowable bearing capacity of the subgrade has failed due to the heavy loads from the tractor trailers; the concrete has lost its support and created the several visible pot holes and separations in the concrete.[10]

At his deposition, however, Solorio denied that he made determinations on what specifically caused the separations and potholes in the pavement.

Again, we find that the trial court did not abuse its discretion in excluding Solorio's testimony regarding causation. Solorio conceded that he did not know "what the schematics of the concrete were as far as the original footing, original depth, original material used." He did not know the original design load capacity of the pavement; he merely assumed that the pavement was designed for small vehicles.[11] Solorio did not take or analyze a core sample or subgrade sample for testing; he stated that his "scope of work was a visual inspection" and it would have been "beyond our scope of work" to perform core sample testing. His report stated that "a structure observation does not typically include any sampling or testing, therefore, no subsurface or otherwise concealed conditions are noted in this report." And, like Juarez, Solorio did not investigate potential alternate causes of damage.[12] *See Jelinek*, 328 S.W.3d at 536. Solorio's testimony as

---

[10] Solorio's report contained recommendations based on his observations, including: "Perform soil testing to obtain soil design values for design of pavement"; "Perform design of pavement, by a professional engineer, based on soil testing"; and "Remove and reinstall subgrade and concrete pavement around the perimeter."

[11] At Solorio's deposition, appellees' counsel asked: "[W]hen you say in your opinion that [the damage] was done by large—large and small tractor[-trailers], because normally someone would design it for lighter loads, that's an assumption you are making?" Solorio replied: "At this point, yes."

[12] At Solorio's deposition, appellees' counsel asked:

[W]ere other elements that may have contributed to the—to the wear and tear on the concrete considered? For instance, drainage, other heavy trucks other than L&F or anything of that nature? In other words, like when it rains, like on this, if it rains heavy, do you determine, well, we have an area, they didn't put the proper slope-off and so we have

17

to the cause of the concrete damage was no more than "subjective belief or unsupported speculation," *Robinson*, 923 S.W.2d at 557, and was therefore properly excluded as unreliable.[13]

Flores's third issue is overruled.

## C.     Exclusion of Lay Causation Testimony

We finally address Flores's second issue, in which he argues that the trial court erred in "excluding/barring/limiting causation testimony of various lay witnesses" regarding the cause of the pavement damages.

### 1.      Applicable Law

Texas Rule of Evidence 701 provides that, if a witness is not testifying as an expert, the witness's testimony "in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness'[s] testimony or the determination of a fact in issue."  TEX. R. EVID. 701.

### 2.      Raul Flores

As noted, Flores testified the pavement that was laid used "regular concrete that is only for cars and small pickup trucks or light vehicles."  His counsel asked whether that meant that "heavy trucks" are not supposed to drive on the pavement, at which point

---

collections of water, things of that [nature], that is going to make the concrete wear and tear faster or the joints weren't done or, you know, they only did a four-inch base and [an] improper base under it?  Was any of that reviewed?

Solorio replied, "No."

[13] Appellees also contend that Juarez and Solorio were not qualified as expert witnesses and that their testimony regarding causation was irrelevant because L&F admitted that its trucks drove over the pavement on certain occasions.  In light of our conclusion that the causation testimony by both witnesses was unreliable, we need not address these arguments.  *See* TEX. R. APP. P. 47.1.

18

appellee's counsel objected[14] and took Flores on voir dire. Flores stated on voir dire that he does not have an engineering degree and that his only experience in construction was several decades ago. He stated, however, that he knows the difference between concrete intended as pavement for light vehicles and that intended as pavement for heavy vehicles because he purchased concrete on many occasions. He stated that the "regular" concrete used for the car wash pavement would be able to bear no more than "eight or 9,000 pounds." He conceded that he did not know how much an empty or loaded 18-wheeler would weigh. The trial court sustained appellees' objection and directed Flores not to testify "about causation and/or the amount of damages."

Flores later testified that, even though there is more regular car traffic on other parts of the pavement, the perimeter area—which is the area that appellees' trucks allegedly drove over—has more damage. His counsel then asked: "So, bottom line, whatever is—whatever is going through the perimeter is what's causing the damage?" Again, appellees' counsel objected on the basis that it addressed causation, and again, the trial court sustained the objection. The trial court stated: "I am not going to allow any question that elicits any type of causation answer be it to a vehicle, a 10-wheeler, an 18-wheeler. That either includes or excludes any causation as to any vehicle."

Subsequently, after appellees closed their case, Flores returned to the witness stand to provide testimony for a bill of exception. He stated that, in his opinion, the perimeter of his car wash parking lot was damaged "because heavy trucks pass by there." He stated that the "trash truck" could not have caused the damage "because at that

_____

[14] Appellees' counsel objected on the basis that the testimony violated an order in limine previously rendered by the trial court. However, the order in limine contained in the record does not prohibit lay testimony regarding the cause of the concrete damage.

19

moment it passed through the center and when I saw that that happened, I went and brought it to their attention and I told them that—for them not to do that again or I was going to call the police."

First, with respect to Flores's trial testimony regarding whether "heavy trucks" were supposed to drive on the pavement, there is no reversible error because the same or similar testimony was later elicited from Flores without objection. *See* TEX. R. APP. P. 44.1(a); *cf. Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 907 (Tex. 2004) ("The general rule is error in the admission of testimony is deemed harmless and is waived if the objecting party subsequently permits the same or similar evidence to be introduced without objection."). Specifically, Flores's counsel asked: "With respect to your—regarding your parking lot—your car wash place, were 18-wheelers supposed to drive through your—your car wash, sir? Obviously the pavement?" Flores replied, "No." No objection was lodged as to this testimony.

We also find no reversible error with respect to the exclusion of Flores's lay opinion testimony regarding causation. Flores's testimony that "heavy trucks" caused the pavement damage was based in part on his observations of what types of vehicles typically traversed different parts of the property and which parts of the property sustained the heaviest damage. In that sense, the testimony was "rationally based on the perception of the witness." TEX. R. EVID. 701. However, assuming without deciding that Flores's lay causation opinion was admissible, there is no reversible error because the testimony would not constitute more than a scintilla of evidence supporting causation. Flores opined in the bill of exception merely that "heavy trucks" caused the damage to the pavement; and, as noted, there was abundant evidence that large trucks other than L&F's

20

18-wheelers traversed the property. Accordingly, even if the testimony was admitted, directed verdict in favor of appellees would still have been proper. *See* TEX. R. APP. P. 44.1(a) ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.").

### 3. Other Witnesses

By his second issue, Flores also argues that, "[e]ven if it was not reversible error to exclude Juarez as an expert, . . . Juarez should have at least been allowed to provide lay causation testimony." However, there was no such testimony included in the bill of exception, and Flores directs us to no other location in the record containing the substance of Juarez's proposed lay opinion testimony. Accordingly, this issue has not been preserved for our review. *See McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 187 (Tex. 1984)); *see also* TEX. R. APP. P. 33.1; *Wimberly v. Contractors Bldg Supply Co.*, No. 13-99-722-CV, 2001 WL 893067, at *4 (Tex. App.—Corpus Christi July 12, 2001, pet. denied) (not designated for publication) ("An appellate court cannot decide whether evidence is improperly excluded unless the evidence is included in the record for review.").

Flores also complains by his second issue that the trial court erred by excluding the lay testimony of Grant Wallander[15] and Ronald Flores. However, Flores directs us to,

---

[15] Flores's counsel read excerpts of Wallander's deposition testimony into the record in making his bill of exception. Wallander stated, in part, that based on his three-and-a-half years of experience driving tanks and trucks in the Army, he believed that only a "big rig" could have caused the damage to the car wash's pavement. In addition, during Flores's case-in-chief, an audio recording of Wallander's deposition testimony was played for the jury. However, no objection to that evidence appears in the record.

and we can find, no location in the record where any party lodged an objection to Wallander's or Ronald Flores's lay testimony. Accordingly, these complaints have also not been preserved for our review. *See* TEX. R. APP. P. 33.1.

We overrule Flores's second issue.

### III. CONCLUSION

Having overruled Flores's five issues on appeal, we affirm the judgment of the trial court.

DORI CONTRERAS GARZA,
Justice

Delivered and filed the
3rd day of April, 2014.